The STATE of Ohio, Appellee,

v.

HOLLOWAY, Appellant.

[Cite as State v. Holloway (1998), 129 Ohio App.3d 790.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 97APA05–622.

Decided Sept. 17, 1998.

*Ronald J. O'Brien,* Franklin County Prosecuting Attorney, and *Steven L. Taylor,* Assistant Prosecuting Attorney, for appellee.

*Carol A. Wright,* for appellant.

---

*Per Curiam.*

Defendant-appellant, DePaul Holloway, appeals from a judgment of conviction in the Franklin County Court of Common Pleas for aggravated murder in violation of R.C. 2903.01, aggravated robbery in violation of R.C. 2911.01, and having a weapon under disability in violation of R.C. 2923.13. The aggravated murder count contained a death penalty specification, pursuant to R.C. 2929.07(A)(7), that the offense was committed while the offender was committing,

attempting to commit, or fleeing immediately after committing aggravated robbery. The aggravated robbery and weapons-under-disability counts contained specifications that appellant had previously been convicted of a felony. The weapons-under-disability count also contained a physical-harm specification.

In accordance with the recommendation of the jury, appellant was sentenced to life imprisonment without the possibility of parole for thirty years. Appellant appeals, assigning as error the following:

"Assignment of Error 1:

"The trial court erred and abused its discretion in failing to grant a continuance of the trial in light of the need for additional time to prepare for DNA evidence. This error denied appellant his rights to a fair trial and the effective assistance of counsel as guaranteed by the U.S. and Ohio Constitutions.

"Assignment of Error No. 2:

"The trial court erred to the prejudice of the appellant in failing to sustain the motion to suppress thereby violating appellant's constitutional rights as set forth in *Miranda v. Arizona* (1966), 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694].

"Assignment of Error 3:

"The trial court erred in applying *Batson v. Kentucky* by manipulating the jury to ensure that the first twelve jurors were not all Caucasians and by finding that the state's *Batson* challenge could be remedied by granting the state an additional peremptory challenge to the alternate jurors.

"Assignment of Error 4:

"The trial court erred in failing to grant the motion for judgment of acquittal, pursuant to Crim.R. 29 as the evidence was insufficient to establish that DePaul Holloway killed Frank Roilton and specifically, that he killed Roilton, as set forth in the R.C. 2929.04(A)(7) specification.

"Assignment of Error 5:

"The trial court erred to the prejudice of the appellant in admitting blood samples, clothing, and materials used by Sylvia Action and Deborah Lambourne because the state failed to maintain and establish the chain of evidence.

"Assignment of Error 6:

"The trial court erred in admitting the Fila shoes and the evidence relating to the Fila shoes as there was no evidence that the shoes belonged to DePaul Holloway. The prejudicial value of this evidence far outweighed any probative value."

On November 22, 1995, appellant and his wife, Roberta Holloway, visited the victim, Frank Roilton, and his girlfriend, Karen Lawson, at Lawson's home.

Frank Roilton left the home of his girlfriend in the company of appellant and his wife, and never returned home. On the morning of November 24, 1995, Lawson filed a missing person report. Later that day, the body of Frank Roilton was found in a trash container in the vicinity of appellant's home.

Upon his arrest on another matter, appellant was found with Roilton's wallet and other personal items in his possession. Appellant also was wearing a pair of jeans that were later discovered to contain the blood of the victim.

The case proceeded to a jury trial. During the initial voir dire, the trial court became concerned that the first prospective jurors that would be seated for general voir dire would all be white. The trial court feared that, if jury seating were done in the order of death qualification, "we're going to have a jury of all white Caucasians which is going to pose some Batson[1] problems." (Tr. 332.)

In an effort to remedy this perceived problem, the trial court proposed that, after death qualification, the jury commissioner scramble the juror questionnaires and draw names randomly. Eventually, however, the parties and the court agreed that the scrambling procedure was unnecessary and, therefore, it was not carried out.

During jury selection, the defense exercised all six of its peremptory challenges to strike white males from the panel. The state used four of its peremptories to strike three white females and one Hispanic female from the panel. The state waived its last two peremptories.

When it came time to select the alternate jurors, the state exercised its first peremptory to strike a black female. The defense struck another white male. At that point, counsel for the state stated:

"Judge, we would like to point out at this juncture that the first of the two excuses that have been excused that they have so far has been a male white, including their sixth peremptory in the main body of the jury panel." (Tr. 1366.)

At that point, the trial court reviewed all of the peremptory challenges that had taken place and noted: "So every white male they excused you had excused a white female with the exception of Mrs. Kerestly who, I believe, was Hispanic female." (Tr. 1367.) The trial court then asked the state for its second and final challenge. The state passed and did not exercise its final peremptory. The defense used its final peremptory to strike another white male.

The trial court then asked both sides to state on the record their reasons for striking jurors. After the defense stated its reasons, the trial court stated:

---

1. *Batson v. Kentucky* (1986), 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69.

"The defense, the defense's peremptory challenges one through six and their two alterantes [*sic*] have all been white males. That does concern me. They have stated their basis for the record. Really, what am I to do? You know, this is just for appellate purpose, it's not that I can call these people back and tell them that they're back on. I'm not allowed to do that." (Tr. 1378.)

The trial court asked the state whether it wished to object, and the state objected, "particularly to these last two on the alternates." (Tr. 1379.)

The trial court then asked the state to give its reasons for exercising its peremptories. After the state did so, the defense did not raise any objection pursuant to *Batson v. Kentucky* (1986), 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69, or ask for a remedy. The state, however, requested that the trial court reinstate the last juror the defense challenged. The following exchange occurred:

"THE COURT: Now, let's talk about the alternates, if we're going to need to remedy that situation. The State forfeited their last one on the two alternate peremptories. I would think that if you had a problem with Mary Scott, Lynn Koch, or William Pearl, or Kirk Becker, we could have done that. However, though I do think we're feeling that right away, we have to do it in systematic order so you don't just jump over Marilyn Scott down on to one of the two males. What are you requesting of the Court on alternates, Mr. Ellis?

"MR. ELLIS [Assistant Prosecutor]: Well, I would like to see Mr. Thompson reinstated. I think that they have not given a valid excuse concerning his removal, and we have excused one, they have excused Mr. Scheiderer, that if that's a valid reason, then that's fine, but I don't see that they have indicated a valid reason for Mr. Thompson being excused.

" * * *

"THE COURT: Well, the law is clear, is that if the record demonstrates that a systematic exclusion of jurors based upon their race is what Batson is about. There's a case that applies to civil cases as well, then also there's a situation where it's applied to gender.

"Here we have just got a pretty much equal, we have males being excluded by the defense, white females being excluded by the State.

"MR. ANDERSON [Defense Counsel]: And quite frankly, I didn't get the impression that there was any systematic exclusion of any one demographic group here. The first time I was aware of that was when I was brought into this room.

"THE COURT: Though we have all agreed there's nothing we can do about the main twelve was the point.

"MR. ELLIS: We're not asking you to do anything about the main twelve.

"THE COURT: Now, all we're talking about is the alternates. All you are asking for is Mr. Thompson to be excused, your challenge, the challenge.

"MR. ELLIS: Yeah.

"MR. SWOPE [Defense Counsel]: I have one other thing to say. My client and I've been talking about Mr. Thompson. He was very uncomfortable with Mr. Thompson. He said that, indicated that I think before we even did this when we were going to do the initial voir dire, this man concerned him. You know, it's his life, I think he's got a right to put some input into it as well.

"THE COURT: Mr. Ellis, you had passed. Of course, nothing is engraved in stone on the alternates yet, but you passed the second alternate. Did you wish to exercise that and, of course, if we're going to do them the way we're doing them, that would bump off Marilyn Scott, and I don't think you mean to do that. So you are going to stand with your decision to pass.

" * * *

"MR. ELLIS: Well, if we could exercise our sixth peremptory?

"THE COURT: Sure.

"MR. ELLIS: We will excuse Mr. Pearl.

" * *. *

"MR. SWOPE: I thought he passed.

"THE COURT: He did, but I'm saying that in light of the fact that we have not had anything engraved in stone yet, no one's been excused, we can't remedy the first twelve. The only thing—

"MR. ELLIS: I guess, what, he's going to allow us to kick Mr. Thompson?

"THE COURT: Okay.

"MR. SWOPE: Okay.

"THE COURT: Okay, so Mr. Pearl will be there.

"MR. SWOPE: We, of course, object to him getting another whack at the apple.

"THE COURT: He's not getting another whack. He's just exercising one that he was originally going to pass before he knew that you were going to exercise Thompson. And I was inclined to go ahead and allow you to excuse Thompson.

"MR. SWOPE: Okay.

"MR. ANDERSON: So this made up the previous mistake they made?

"THE COURT: No. What it is we can't remedy what you have done to the first twelve because they have already been excused and left. We probably

should have put the Batson objection for the record before that, so the best I can do now is make it all for the record. Really, I don't know that it's my authority anyway. It's, I think, an appellate decision to say whether or not they have, based upon this policy and this record and these reasons whether or not there was a systematic challenge. I don't think that I'm the one that makes that decision. I think an appellate court is the one.

"MR. CANEPA [Assistant Prosecutor]: Really, the worst remedy, the most stringent remedy would be to start again.

"THE COURT: Start again?

"MR. CANEPA: Obviously, you're not saying we're not going to go that far.

"THE COURT: I don't think so.

"MR. CANEPA: It's an appellate issue.

"THE COURT: I think its an appellate issue on the first twelve because I just don't know what you can do.

"* * *

"THE COURT: So Pearl will go. * * * " (Tr. 1385–1391.)

 We find that the third assignment of error is dispositive of this appeal and limit our discussion to the issues raised therein. As to the third assignment of error, the parties agree that the trial court misunderstood the holding in *Batson* when it expressed concern that the actual jury panel could end up being composed of all whites. *Batson* does not create a right to a jury of any particular composition. *Phillips v. Value City Stores* (Sept. 16, 1997), Franklin App. No. 96APE12–1711, unreported, 1997 WL 578950. Rather, in *Batson*, the United States Supreme Court held that the Equal Protection Clause of the United States Constitution precludes a prosecutor from using peremptory challenges to exclude potential jurors solely on account of race. *Id.*, 476 U.S. at 89, 106 S.Ct. at 1719, 90 L.Ed.2d at 82–83. *Batson* has since been extended to peremptory challenges by the defense, *Georgia v. McCollum* (1992), 505 U.S. 42, 112 S.Ct. 2348, 120 L.Ed.2d 33, and to preclude gender-based peremptory challenges. *J.E.B. v. Alabama ex rel. T.B.* (1994), 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89.

Although the trial court misapplied *Batson* by attempting to make certain that the first twelve jurors were not all white, the trial court did not carry out its proposed plan to scramble the jury questionnaires. Thus, at that point in the trial no actual error occurred, and appellant was not prejudiced.

 Subsequently, during selection of the alternate jurors, the state raised a *Batson* challenge. The trial court never made a finding of purposeful discrimination, apparently erroneously believing that an appellate court had to resolve the

issue. In fact, it is the trial court's initial responsibility to determine whether a party has violated the rule articulated in *Batson.*

▇ The Supreme Court has articulated a three-part process for proving a *Batson* violation. First, a party must establish a *prima facie* case of discriminatory purpose. This can be done by pointing to a pattern of challenges against a particular race or gender. Once the opponent of a peremptory challenge has made out a *prima facie* case of impermissible discrimination, the burden of production shifts to the proponent of the strike to come forward with a race- or gender-neutral explanation. If a race- or gender-neutral explanation is tendered, the trial court must then decide whether the opponent of the strike has proved purposeful discrimination. *Purkett v. Elem* (1995), 514 U.S. 765, 766–769, 115 S.Ct. 1769, 1770–1771, 131 L.Ed.2d 834, 838–840; *Batson, supra,* 476 U.S. at 98–99, 106 S.Ct. 1712 at 1723–1724, 90 L.Ed.2d at 88–90.

▇ In the event a trial court finds that the use of peremptory challenges has been predicated on an impermissible group affiliation, the trial court has discretion to fashion an appropriate remedy. See *id.* at 100, 106 S.Ct. at 1725, 90 L.Ed.2d at 90, fn. 24 ("In light of the variety of jury selection practices followed in our state and federal trial courts, we make no attempt to instruct these courts how best to implement our holding today."). Remedies may include seating the challenged person on the jury or dismissing the entire panel and selecting a new jury from a panel not previously associated with the case. *Id.*

Here, the trial court had the parties state their reasons for exercising their peremptory challenges, but never exercised its responsibility to determine from all the evidence whether the defense had engaged in purposeful discrimination. The trial court remarked that it was "concerned" about the defense using all of its peremptories to strike white males and discussed the question of remedy. This raises the possibility that the trial court would have sustained the objection. However, later the trial court indicated that it was "inclined" to allow the defense to exercise its final peremptory to excuse a white male and, in fact, did allow Mr. Thompson to be excused as an alternate. Yet the trial court permitted the state to exercise a peremptory challenge after having waived its final peremptory. Based on the conflicting remarks and actions of the trial court, we are unable to conclude from the record that the trial court found the *Batson* challenge meritorious.

▇ Despite the failure to sustain or overrule the *Batson* challenge, the trial court permitted the state to exercise a peremptory challenge after it had previously waived its final peremptory challenge. This was a clear violation of Crim.R. 24(D), which provides:

"(D) Manner of exercising peremptory challenges. Peremptory challenges may be exercised after the minimum number of jurors allowed by the rules has been passed for cause and seated on the panel. Peremptory challenges shall be exercised alternately, with the first challenge exercised by the state. The failure of a party to exercise a peremptory challenge constitutes a waiver of that challenge. If all parties, alternately and in sequence, fail to exercise a peremptory challenge, the joint failure constitutes a waiver of all peremptory challenges."

In *Columbus v. Hunt* (Mar. 30, 1989), Franklin App. No. 88AP–512, unreported, 1989 WL 29379, this court addressed a nearly identical question. The defendant was charged with operating a motor vehicle while under the influence of alcohol. During selection of the alternate juror the prosecution elected not to exercise a peremptory challenge; however, the defendant exercised his. A second alternate was seated and the prosecution was allowed, over defendant's objection, to exercise a peremptory challenge. Defendant moved for a mistrial, the trial court overruled the motion, and a third alternate was sworn and seated. The alternate juror then replaced one of the jurors originally impaneled. This court held that the trial court erred in allowing the prosecution to exercise an "extra" peremptory challenge in excess of that allowed by the Criminal Rules. This court also held that, as a matter of law, the defendant was not required to make a showing of actual prejudice where the state is granted an "extra" peremptory challenge. *Id.*, citing *State v. Pryor* (June 26, 1986), Highland App. No. 595, unreported, 1986 WL 7242; *State v. Long* (Sept. 28, 1984), Trumbull App. No. 3371, unreported, 1984 WL 7293. See, also, *State v. Sage* (Nov. 3, 1983), Franklin App. No. 82AP–983, unreported, 1983 WL 3747. ("[W]e hold that defendant is not required to demonstrate the specific manner in which the trial court's refusal to allow him to exercise the number of peremptory challenges to which he was entitled prejudiced him.").

Here, the state had passed on its last challenge. The trial court then granted the state an extra peremptory challenge, and all four alternates eventually replaced regular jurors. Such an additional challenge is clearly in violation of what is allowed by Crim.R. 24(D) and constitutes error. Appellant's third assignment of error is sustained.

Given our disposition of the third assignment of error and the necessity for a retrial with a properly impanelled jury, we need not address the remaining assignments of error and they are overruled as moot.

Accordingly, appellant's third assignment of error is sustained, and the first, second, fourth, fifth, and sixth assignments of error are overruled as moot. The judgment of the Franklin County Court of Common Pleas is reversed, and this

cause is remanded to that court for a new trial and for further proceedings in accordance with law and consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

BOWMAN and MASON, JJ., concur.

LAZARUS, J., concurs separately.

LAZARUS, Judge, concurring separately.

I agree that the judgment must be reversed and the cause remanded for a new trial because the trial court granted the state an additional peremptory challenge. However, I write separately because I do not believe that our disposition of the third assignment of error renders the fourth assignment of error moot.

An issue is moot when a determination can have no practical effect on the existing controversy. Here, a determination that the evidence was insufficient would, in effect, be an acquittal and would bar retrial of the defendant. *Burks v. United States* (1978), 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1; *Greene v. Massey* (1978), 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15. Moreover, a reversal on the basis of insufficiency means that the state's case is so lacking that it should not have even been submitted to the jury. *Burks, supra,* at 16, 98 S.Ct. at 2150, 57 L.Ed.2d at 12–13. Therefore, if we were to find that the evidence was insufficient to establish that appellant killed Frank Roilton, or that he was the principal offender in a robbery resulting in the death of Frank Roilton, retrial would be barred by the Double Jeopardy Clauses of the Ohio and United States Constitutions. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387–388, 678 N.E.2d 541, 546–548.

Nevertheless, the circumstantial evidence against appellant was strong and clearly sufficient to support the guilty verdicts beyond a reasonable doubt. Therefore, I would sustain the third assignment of error, overrule the fourth assignment of error, and overrule the remaining assignments of error as moot.