[Cite as *State v. Jones*, 2018-Ohio-4754.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

STATE OF OHIO                  :          APPEAL NO. C-170358
                                          TRIAL NO. C-16CRB-17496B
    Plaintiff-Appellee,        :

 vs.                           :
                                          *O P I N I O N.*
SEANTE JONES,                  :

    Defendant-Appellant.       :

Criminal Appeal From:  Hamilton County Municipal Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  November 30, 2018

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Alex Scott Havlin*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender*,* and *David Hoffman,* Assistant Public Defender*,* for Defendant-Appellant.

**CUNNINGHAM, Presiding Judge.**

{¶1}    Following a jury trial, defendant-appellant Seante Jones challenges his conviction for complicity to theft, in violation of R.C. 2923.03.   Jones had been observed shoplifting men's clothing from a Burlington Coat Factory store.   He was apprehended minutes after leaving the store with merchandise that he had not paid for.   Because the trial court's error in permitting the state to exercise a peremptory challenge out of sequence was not a structural error, mandating automatic reversal, Jones was required to demonstrate prejudice flowing from that error. We conclude that he was not prejudiced, and affirm.

## I.   Shoplifting Men's Clothing

{¶2}    On June 29, 2016, Steve Seiter, a loss prevention associate with over 16 years of experience, observed Jones enter a Burlington Coat Factory store with another person.   Seiter followed Jones and his companion, later identified as Ricardo Scott, on the store's numerous surveillance cameras for 15 to 20 minutes.   Jones and Scott went to the men's clothing department.   While Jones perused the merchandise, Seiter noticed that he "continued to watch the people around him to see if they were possibly paying attention to what he was doing."   Based upon his experience, Seiter concluded that Jones was preparing to steal store merchandise.   Jones then selected a number of items of clothing, including a pair of black shorts and a red shirt.   As Scott left the store, Seiter observed Jones enter the fitting rooms with the clothing. Jones remained in the fitting room for five minutes.   When he left the fitting rooms, Jones put some items back on a rack and then headed for the store's exit at a fast pace.   He did not stop to pay for any merchandise.

{¶3} Seiter then checked to see if Jones had replaced all the items of clothing, but he could not locate the black shorts and red shirt. Seiter alerted the Springdale Police Department of the suspected theft.

{¶4} Based on Seiter's description of the vehicle that Jones and Scott departed in, Springdale Police Officer Joseph Robers stopped their vehicle within minutes at a gas station located a quarter of a mile from the store. Officer Robers ordered Jones and Scott from the vehicle. Officer Robers found that both Jones and Scott had merchandise from the Burlington Coat Factory stuffed inside their pants. Additional store merchandise was found in the vehicle, including the black shorts and red shirt that Jones had taken into the fitting room.

{¶5} Seiter arrived at the gas station and identified Jones and Scott as the two persons that he had watched at the store. He identified the merchandise as belonging to Burlington Coat Factory, including the black shorts and red shirt, each of which still had sales tags attached. Neither item had been paid for.

{¶6} Jones was charged by complaint with the theft of "various clothing items and a watch" from Burlington Coat Factory, in violation of R.C. 2913.02. Jones exercised his right to a jury trial. During the selection of the jury, and over Jones' objection, the trial court permitted the state to exercise its third and final peremptory challenge "out of sequence," after the state had waived that challenge, and after the selection of alternate jurors was already under way. Jones also filed a motion for a mistrial on the basis of the flawed jury selection. After offering an explanation for its actions, the trial court denied the motion and the case proceeded to trial.

{¶7} At trial, Seiter and Officer Robers testified on behalf of the state. Jones testified in his own defense and stated that he had paid Scott to drive him to a mall but that Scott had insisted that the two stop at the Burlington Coat Factory first. He claimed to have accompanied Scott into the store, looked at clothing for about

five minutes, and then left the store to wait for Scott. Jones stated that Scott had pulled stolen clothing items out of his pants once he returned to the vehicle.

{¶8} Jones testified that when the two were stopped by Officer Robers, there "[w]asn't anything found on me. Everything was found in the car. I'm not even denying that it was stolen items in the car. Yes, because my dude did go in there and steal. * * * [T]here was items found in the car. * * * I'm not going to deny that fact at all." Jones also admitted into evidence a video recording of some of the events that Seiter had captured on the day of the theft. Seiter had admitted at trial that he had failed to record most of the events that he described at trial. The admitted video recording showed Jones and Scott's long stay in the men's clothing department but did not show Jones taking any merchandise.

{¶9} At the conclusion of the trial, the state requested a complicity instruction, under R.C. 2923.03, alleging that Jones had acted not only as a principal but also as an aider and abettor in the theft offense charged in the complaint. The trial court gave the instruction over Jones' objection. The jury returned a not-guilty verdict on the theft offense, but it found Jones guilty of complicity to theft. The trial court entered judgment on the verdict and imposed a jail sentence of 180 days, with 177 days suspended. It also imposed a $200 fine, court costs, and a six-month period of community control.

{¶10} Jones appealed raising three assignments of error.

## II. Peremptory-Challenge Issue

{¶11} For clarity, we will address Jones' assignments of error in temporal order. In his third assignment of error, Jones asserts that the trial court erred in allowing the state to use its third peremptory challenge "out of sequence," after it had previously waived the challenge. He further argues that he was not required to demonstrate actual prejudice flowing from that error to overturn his conviction. He urges us to follow the automatic-reversal rule enunciated by the Tenth Appellate

District in 1998, when it held that "as a matter of law, [a] defendant [is] not required to make a showing of actual prejudice where the state is granted an 'extra' peremptory challenge." *State v. Holloway*, 129 Ohio App.3d 790, 798, 719 N.E.2d 70 (10th Dist.1998). The state argues that we apply our own precedent holding that when a trial court errs in extending additional peremptory challenges to the state, "such error should not be deemed of such prejudicial character as to require a reversal of the judgment," absent a showing of prejudice flowing from that error. *State v. Bohannon*, 64 Ohio App. 431, 439, 28 N.E.2d 1010 (1st Dist.1940).

{¶12} While permitting the state to exercise a peremptory challenge out of sequence was error, it was not one of the very limited class of trial errors which are not reviewable for harmless error under Crim.R. 52(A), and which mandate automatic reversal. Thus, to prevail, Jones must demonstrate actual prejudice flowing from that error. But he cannot.

### a. Two-step review for error and prejudice under Crim.R. 52(A)

{¶13} Crim.R. 52(A) governs this criminal appeal of a nonforfeited error, and provides that "[a]ny error * * * which does not affect substantial rights shall be disregarded." A reviewing court must first determine whether there was an error—a deviation from a legal rule. Second, the reviewing court must analyze the trial court record to determine whether the error "affect[ed] substantial rights" of the defendant, that is, whether the error was prejudicial and affected the outcome of the trial court proceedings. *See State v. Fisher*, 99 Ohio St.3d 127, 2003-Ohio-2761, 789 N.E.2d 222, ¶ 7. But there is "a very limited class" of errors which are not reviewable for harmless error under Crim.R. 52(A). These errors, now described as "structural errors," mandate a finding of per se prejudice, and automatic reversal. *See Fisher* at ¶ 9.

### b. Exercising peremptory challenges

{¶14} The first step in our analysis requires us to identify the legal rules governing the use of peremptory challenges in the trial court. In a criminal proceeding, the use of peremptory challenges allows both the prosecution and the defense to secure a more fair and impartial jury by enabling them to remove jurors whom they perceive as biased, even if the jurors are not subject to a challenge for cause. "The right of peremptory challenge is not, of itself, a right to select, but a right to reject, jurors." *United States v. Marchant & Colson*, 12 Wheat 480, 482, 6 L.Ed. 700 (1827), quoted in *Bohannon*, 64 Ohio App. at 437, 28 N.E.2d 1010.

{¶15} Challenges for cause permit the parties to reject jurors on narrowly specified bases that must be demonstrated in the record and found by the trial court. *See* Crim.R. 24(C). Peremptory challenges provide both a defendant and the state an opportunity to dismiss potential jurors for any reason, except for an impermissible basis such as race or gender, without inquiry and without the trial court's approval. *See* Crim.R. 24(D); *see also State v. Reynolds*, 80 Ohio St.3d 670, 675, 687 N.E.2d 1358 (1998).

{¶16} To ensure that the parties are equally able to employ peremptory challenges, Crim.R. 24 mandates that they receive the same number of peremptory challenges. In this misdemeanor trial, Jones and the state were each entitled to three peremptory challenges, plus one additional challenge to be used only against an alternate juror. *See* Crim.R. 24(D) and (G).

{¶17} Generally, after the number of jurors required at trial has been seated, the parties begin exercising their peremptory challenges. Under Crim.R. 24(E), the state begins the peremptory-challenge process, and then the parties alternate exercising their remaining challenges. A party's failure to exercise a challenge in turn waives that party's right to that challenge, in effect forcing a party to exercise each challenge in turn or lose it. *See* Crim.R. 24(E); *see also* 2005 Staff Notes,

Crim.R. 24(E) ("[F]ailure of a party to exercise a given peremptory challenge waives that challenge but does not waive any other peremptory challenges to which the party may otherwise be entitled.").

### c. Crim.R. 24 violations are not subject to automatic reversal

{¶18} The next step in our inquiry is to determine whether violations of Crim.R. 24 are subject to automatic reversal, or whether they must be scrutinized for harmless error under Crim.R. 52(A).

{¶19} A structural error is a *constitutional* defect that affects the framework within which the trial proceeds, rather than simply being an error in the trial process itself. (Emphasis added.) *State v. Clinton*, 153 Ohio St.3d 422, 2017-Ohio-9423, 108 N.E.3d 1. As recent decisions make clear, an error is designated as "structural" not because of the difficulty in demonstrating prejudice, but rather when the error permeates a trial and necessarily renders the trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence. *See Rivera v. Illinois*, 556 U.S. 148, 160, 129 S.Ct. 1446, 173 L.Ed.2d 320 (2009); *see also Fisher*, 99 Ohio St.3d 127, 2003-Ohio-2761, 789 N.E.2d 222, at ¶ 9 (holding that the practice of allowing jurors to question witnesses is not a constitutional error, and thus is not structural error).

{¶20} The "very limited class" of structural errors that courts have identified include denial of counsel of choice, denial of self-representation, denial of a public trial, a defective reasonable-doubt instruction, racial discrimination in selection of the grand jury, and a biased trial judge. *See United States v. Davila*, 569 U.S. 597, 611, 133 S.Ct. 2139, 186 L.Ed.2d 139 (2013); *see also State v. Hill*, 92 Ohio St.3d 191, 199, 749 N.E.2d 274 (2001).

{¶21} In determining whether an alleged error is structural, the threshold inquiry is whether the error involves the deprivation of a constitutional right. *See Fisher* at ¶ 18; *see also State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶ 24. "[T]he trial-error/structural-error distinction is irrelevant unless it

is first established that constitutional error has occurred." *See State v. Esparza*, 74 Ohio St.3d 660, 662, 660 N.E.2d 1194 (1996).

{¶22} But there is no federal or state constitutional requirement that peremptory challenges be provided within a trial. *See State v. Greer*, 39 Ohio St.3d 236, 245, 530 N.E.2d 382 (1988); *see also Rivera*, 556 U.S. at 158-161, 129 S.Ct. 1446, 173 L.Ed.2d 320 (holding that if "a defendant is tried before a qualified jury composed of individuals not challengeable for cause, the loss of a peremptory challenge due to a state court's good-faith error is not a matter of federal constitutional concern").

{¶23} In noncapital criminal cases, the right to peremptory challenges exists by virtue of Crim.R. 24, not by virtue of the federal or Ohio constitution. *See Greer* at 246; *see also Premier Therapy, LLC v. Childs*, 2016-Ohio-7934, 75 N.E.3d 692, ¶ 40 (7th Dist.). The number of challenges available to each party is controlled by Crim.R. 24(D) and (G), and the order in which they may be used is controlled by Crim.R. 24(E). Any error, or deviation from these legal rules, is subject to the error-and-prejudice analysis under Crim.R. 52(A). *See Greer* at 246 (noting that a trial court's failure to properly control the use of peremptory challenges and to award the state an additional challenge was a procedural, rather than a constitutional, defect); *see also State v. Jackson*, 92 Ohio St.3d 436, 439, 751 N.E.2d 946 (2001) (holding that a trial court's error in permitting alternate jurors to remain during jury deliberations, in violation of former Crim.R. 24(F), was not cause for automatic reversal).

{¶24} Thus we will not adopt the automatic-reversal remedy advanced in *Holloway*. That rule was announced without reference to a deprivation of constitutional rights or to Crim.R. 52(A). *See Columbus v. Hunt*, 10th Dist. Franklin No. 88AP-512, 1989 WL 29379, *3 (March 30, 1989), cited in *Holloway*, 129 Ohio App.3d at 798, 719 N.E.2d 70. The rule of *Bohannon*, requiring a showing of

prejudice and rejecting automatic reversal, remains a correct statement of current federal and Ohio Supreme Court precedent regarding which errors are so intrinsically harmful to a fair trial as to require automatic reversal.

{¶25} Despite its age, the *Bohannon* decision reflects the modern trend of courts revisiting and limiting their earlier, automatic-reversal precedent. For example, the Colorado Supreme Court has recently rejected its earlier automatic-reversal case law and has held that "allowing a defendant fewer peremptory challenges than * * * available to and exercised by the prosecution, does not, in and of itself, amount to structural error." *People v. Novotny*, 320 P.3d 1194, ¶ 27 (Colo.2014); *see United States v. Lindsey*, 634 F.3d 541, 548-49 (9th Cir.2011) (rejecting its prior automatic-reversal rule when the trial court errs in the number of peremptory challenges permitted); *State v. Rayfield*, 369 S.C. 106, 114, 631 S.E.2d 244 (2006).

{¶26} Given that a trial court's error in controlling the use of peremptory challenges available to a party is not a constitutional error, it cannot be structural error. Thus Jones can prevail only if the trial court erred and that error was prejudicial and affected the outcome of the trial court proceedings. *See* Crim.R. 52(A).

### d. Error for the state to challenge "out of sequence"

{¶27} In this case, near the end of jury selection, the state and Jones had each exercised two of their three peremptory challenges. Prospective juror Charron was examined by the parties. The trial court then addressed the state.

> THE COURT: [W]ould you like to exercise the county's third and final peremptory challenge?
>
> ASSISTANT PROSECUTING ATTORNEY: No, I would not, Your Honor.
>
> THE COURT: So you're satisfied?

ASSISTANT PROSECUTING ATTORNEY:   Yes, Your Honor.

THE COURT:   [Defense counsel], would you like to exercise the defense's third and final peremptory?

DEFENSE COUNSEL:   We would, Judge.   At this time we would like to thank and excuse * * * Mr. Charron.

{¶28}   Thus the state waived its final challenge and Jones exercised his final challenge on prospective juror Charron.

{¶29}   Next, prospective juror White was questioned at length by the state and by the trial court.   White had initially expressed concerns regarding police-involved shootings in other parts of the nation.   Under questioning, he ultimately stated that he could set those issues aside, would listen to the evidence introduced in this case, would keep an open mind until a verdict was reached, and would remain fair and impartial to the defendant and to the state.

{¶30}   The assistant prosecuting attorney then stated that he had no further questions for White, and passed the prospective juror for cause.   He made no other comment and did not attempt to exercise a peremptory challenge.   The trial court addressed Jones' trial counsel.

THE COURT:  Do you want to inquire of Mr. White?

DEFENSE COUNSEL:  Judge, after hearing the prosecution's questions and the Judge's follow-up questions, I have no further questions.  We are satisfied with the jury.

THE COURT:  So you --

DEFENSE COUNSEL:  Pass for cause.

{¶31}   The trial court then began the examination of the alternate jurors, stating, "So let's bring up Mr. Roland as the possible alternate.   Come on up, sir,

please." The state questioned prospective alternate juror Roland. At the conclusion of the questioning, the court addressed the state.

THE COURT: All right. Do you pass for cause on [Roland]?

ASSISTANT PROSECUTING ATTORNEY: I do, Your Honor.

DEFENSE COUNSEL: I have no further questions, Judge. Pass for cause.

THE COURT: Would you like to – would the prosecution like to exercise their one and only peremptory with respect to the alternate juror?

ASSISTANT PROSECUTING ATTORNEY: With respect to the alternate juror, no.

THE COURT: Do you want to exercise your one and only peremptory with respect to [the alternate juror]?

DEFENSE COUNSEL: No, Your Honor.

THE COURT: All right. Is the prosecution satisfied with the jury?

ASSISTANT PROSECUTING ATTORNEY: Yes, Your Honor.

THE COURT: Is the defense satisfied with the composition of the jury?

DEFENSE COUNSEL: We are, Judge.

{¶32} After two additional alternate jurors had been questioned, the state approached and asked to address the court in chambers or at sidebar. An off-the-record, sidebar conference was held. The trial court then went on the record, but out of hearing of the jury, explaining that the state now wished to exercise a peremptory challenge against prospective juror White. The court noted that it had reviewed some unidentified portion of the trial transcript, and that it would "correct the

record." Over Jones' objection, the court then informed the jury that "I did not give the prosecution their third and final peremptory challenge as to [prospective juror] White," and excused the prospective juror. We note that juror Roland replaced White, remained on the jury, and signed the verdict forms.

{¶33} Both in ruling on the state's request and in ruling on Jones' subsequent motion for mistrial, it is clear from the transcript of the proceedings that trial court and the parties had focused their inquiry entirely on whether the state could use "its third and final" peremptory challenge against prospective juror White. No mention was made of the state's waiver of its challenge as to prospective juror Charron.

{¶34} When the court denied Jones' motion for mistrial, the trial court explained that it had permitted the state to exercise its peremptory challenge of White "out of sequence" in an attempt to correct its perceived failure to "offer" the state its "final" challenge. Jones argued to the court that the state had waived its final challenge to regular members of the jury when it remained silent and permitted "Mr. White" to be seated. The court responded, "How did [the state] implicitly fail to exercise [its challenge]? I didn't offer it to them." This statement was true enough but ignored that fact that the court had previously made that precise invitation as to prospective juror Charron.

{¶35} But Crim.R. 24 makes no provision that a party's exercise of a peremptory challenge must be predicated on the trial court's invitation to do so. The right to exercise a challenge lies with a party and not the court. Here, the state did not use its third and final challenge on prospective juror White at the conclusion of his voir dire examination. Crim.R. 24(E) provides that the state's failure to exercise its peremptory challenge then constituted a waiver of that challenge. The trial court's action in permitting the challenge "out of sequence" was a clear violation of Crim.R. 24(D) and (E). *See Holloway*, 129 Ohio App.3d at 797, 719 N.E.2d 70.

12

**{¶36}** It is beyond cavil that the trial court erred in permitting the state to exercise its third peremptory challenge after the state had waived that challenge, after the selection of the alternate jurors was already under way, and after the court had expressly asked the parties if they were satisfied with the jury.

### e. Jones cannot demonstrate prejudice

**{¶37}** This conclusion does not end our inquiry. Showing that an error occurred is not enough. Jones also must demonstrate that the error affected the outcome of the proceeding. On the state of this record, we conclude that he cannot.

**{¶38}** In anticipation of our adoption of the automatic-reversal rule, on appeal Jones has not advanced an argument demonstrating how he was prejudiced by the trial court's error. From our examination of the trial record, however, we note that Jones argued there that permitting the state to remove prospective juror White deprived him of "a potentially friendly juror."

**{¶39}** But the right to ensure that a particular juror remain on the panel is not one secured by Crim.R. 24. The function of a peremptory challenge is to reject potential jurors viewed as biased toward the party exercising the challenge. *See Bohannon*, 64 Ohio App. at 437, 28 N.E.2d 1010. Here, the state's improper challenge to prospective juror White resulted in prospective alternate juror Roland's taking White's place on the panel. Jones listened to the state's and the trial court's examination of Roland, asked no questions of him, passed him for cause, and did not exercise his remaining Crim.R. 24(G) alternate peremptory challenge to exclude him from the panel. Jones could hardly have viewed Roland as an unfriendly juror.

**{¶40}** Where Jones had ample opportunity to examine the prospective juror on voir dire, found no showing of any bias or lack of impartiality on his part challengeable for cause, and elected not to use his peremptory challenge to remove the prospective juror, we cannot say that he has demonstrated prejudice flowing from the trial court's error.

{¶41}  Jones' third assignment of error is overruled.

### III. Jury Charge on Complicity

{¶42}  In his first assignment of error, Jones argues that the trial court erred in instructing the jury on complicity over his objection.  At trial, Jones maintained solely that because the state had tried the case on the theory that he was the principal offender of a single theft offense, the complicity instruction was not warranted.  The evidence of complicity was "so remote" that its inclusion would confuse the jury, and would not support an instruction on complicity.  On appeal, however, he now argues that since the complaint did not charge him "with respect to the theft offense committed by [Scott]," the trial court erred in charging the jury that Jones could be found to be an aider and abettor.

{¶43}  A person who violates R.C. 2923.03(A) by aiding and abetting another in committing an offense "is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender.  A charge of complicity may be stated in terms of this section, or in terms of the principal offense." R.C. 2923.03(F). Thus, if the evidence permits, a defendant is deemed to be on notice that he can be convicted as a principal offender or as an accomplice under R.C. 2923.03(F).  *See State v. Harrington*, 1st Dist. Hamilton Nos. C-080547 and C-080548, 2009-Ohio-5576, ¶ 12.  And where the state presents evidence that the defendant acted in concert with another person to commit a crime, a jury instruction on complicity is proper.  *See State v. Smith*, 1st Dist. Hamilton Nos. C-080712 and C-090505, 2009-Ohio-6932, ¶ 33.  A trial court's decision to grant a requested jury instruction is reviewed under an abuse-of-discretion standard. *See State v. Bush*, 1st Dist. Hamilton No. C-090291, 2010-Ohio-2874, ¶ 13, citing *State v. Wolons*, 44 Ohio St.3d 64, 68, 541 N.E.2d 443 (1989).

{¶44}  In this case, the trial court did not abuse its discretion in providing an instruction on complicity.  The complaint initiating the prosecution alleged that

Jones had taken "various clothing items and a watch" from Burlington Coat Factory. The evidence presented at trial demonstrated that Jones had acted in concert, as an aider and abettor, with Scott in committing the theft of clothing items. Jones was observed entering the store with Scott. Both went to the men's clothing department and selected clothing. Jones watched nearby persons to see if they were being observed. The loss prevention associate observed the two and concluded that both Scott and Jones had concealed store property on their persons. Jones exited from the store quickly and joined Scott in a vehicle. They drove away together, and were apprehended together. Jones admitted that Scott had removed stolen merchandise from his pants once in the vehicle. Under these circumstances, the jury could reasonably have concluded that Scott had been the principal offender and that Jones had aided and abetted his efforts. On these facts, the instruction was warranted and the trial court did not abuse its discretion in giving the instruction on complicity. Jones' first assignment of error is overruled.

{¶45} Jones also argues on appeal that the trial court failed to instruct the jury that it was required to acquit Jones of complicity if it found that the state failed to prove the essential elements of the offense beyond a reasonable doubt. Jones did not bring this matter to the trial court's attention at a time when the alleged error could have been corrected or avoided. Thus he had forfeited all but plain error in regards to this matter. *See* Crim.R. 30(A); *see also State v. Harris*, 2017-Ohio-5594, 92 N.E.3d 1283, ¶ 15 (1st Dist.). Crim.R. 52(B) places the burden of demonstrating plain error upon the defendant-appellant. *See State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶ 14.

{¶46} On appeal, Jones has not presented a claim of plain error and does not provide any reasoning in support of this position. Jones bears the burden of affirmatively setting forth an argument on appeal and pointing this court to applicable, legal authority in support of that argument as well as to the relevant

portions of the record. *See* App.R. 12(A) and 16(A)(7); *see also* 1st Dist. Loc.R. 16(A)(3)(e); *State v. Perez*, 1st Dist. Hamilton No. C-040363, 2005-Ohio-1326, ¶ 21-22. If an argument exists that can support Jones' assignment of error, it is not this court's duty to root it out. *See State v. Raber*, 189 Ohio App.3d 396, 2010-Ohio-4066, 938 N.E.2d 1060, ¶ 30 (9th Dist.). An appeals court will not construct a claim of plain error on a defendant's behalf if the defendant fails to argue plain error on appeal. *See State v. Tabor*, 4th Dist. Jackson No. 16CA9, 2017-Ohio-8656, ¶ 46. In any event, here, the trial court did instruct the jury that its verdict "must be not guilty" on the complicity offense if it found that the state had failed to prove each essential element of complicity "beyond reasonable doubt."

{¶47} The first assignment of error is overruled.

### IV. Weight and Sufficiency Challenges

{¶48} In his second assignment of error, Jones challenges the manifest weight and sufficiency of the evidence adduced to support his conviction for complicity.

{¶49} Our review of the record fails to persuade us that the jury, sitting as the trier of fact, clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *See State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). The jury was entitled to reject Jones' theory that he had merely accompanied Scott to the store, and had not acted in concert with Scott to commit a theft of men's clothing.

{¶50} The state presented ample evidence, including the testimony of Seiter that Jones had entered the store with Scott, had watched to see if they were being observed, and had taken clothing without paying for it, and the testimony of Officer Robers that Jones and Scott were apprehended together shortly after leaving the store and that stolen clothing items were found with them. Jones' own testimony that Scott had removed stolen merchandise from his pants after leaving the store

also supported the state's case. As the weight to be given the evidence and the credibility of the witnesses were primarily for the trier of fact to determine, the jury, in resolving conflicts in the testimony, particularly between Seiter's and Jones' descriptions of what Jones had done inside the store, could properly have found Jones guilty of complicity, and thus did not lose its way. *See State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

{¶51} The record also reflects substantial, credible evidence from which to reasonably conclude that the state had proved all elements of the charged crime beyond a reasonable doubt, including that Jones had aided and abetted Scott in committing a theft offense. *See* R.C. 2923.03; *see also State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 36; *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The second assignment of error is overruled.

### V. Conclusion

{¶52} Having overruled each of Jones' assignments of error, we affirm the judgment of the trial court.

Judgment affirmed.

**MYERS** and **MILLER, JJ.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.