[Cite as *State v. Smith*, 2020-Ohio-649.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-180227 |
| | | TRIAL NO. B-1701479 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| EDWARD SMITH, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: February 26, 2020

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Judith Anton Lapp*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Arenstein & Gallagher* and *Hal R. Arenstein*, for Defendant-Appellant.

CROUSE, Judge.

{¶1} Defendant-appellant Edward Smith appeals his convictions for aggravated murder and having a weapon while under a disability. In his appeal, Smith raises five assignments of error for our review. For the reasons set forth below, we affirm the judgment of the trial court.

*Facts and Procedure*

{¶2} In a convoluted chain of events, Smith shot and killed Trevor Tiemann. The primary evidence of the incident came from several surveillance videos located in the area. The videos depict a series of inconspicuous movements and covert intentions that culminated into a chaotic situation.

{¶3} On February 19, 2017, Tiemann rode his motorcycle to a gas station in the Over-the-Rhine neighborhood of Cincinnati with the intention of selling his fiancée's handgun for drugs. Tiemann parked at a gas pump and met with several individuals. Among these individuals was Ronnel "Irv" Clay, an acquaintance of Smith.

{¶4} After Irv saw Tiemann's handgun, he met with Smith. They talked for approximately 40 seconds before Irv rejoined Tiemann at the gas pump. Following shortly behind, Smith met Irv at the gas pump to look at the handgun.

{¶5} Thereafter, Irv, Smith, and a man known only as "Q" briefly interacted in the street bordering the gas station. Irv and Q walked away while Smith stayed behind on the adjoining sidewalk. Tiemann then drove over to Smith. Irv rejoined Smith and began conversing with Tiemann. Moments later, Smith leaned in toward Tiemann, and Irv, taking advantage of Smith's distraction, grabbed Tiemann's gun and ran. Tiemann put his motorcycle in gear and gave chase while Smith intently watched.

{¶6} Early in the chase, Irv eluded Tiemann behind a parked car. With Tiemann out of sight, Irv fled from the area. Rather than fleeing with Irv, Smith casually

2

sat down on a set of stairs to observe the surrounding chaos. Tiemann eventually returned, driving in the direction that Irv had fled. At that point, Smith inexplicably jumped in front of Tiemann's motorcycle. With no time to stop or change direction, Tiemann collided with Smith.

{¶7} Still in a frenzy, Tiemann continued winding up and down the streets on his motorcycle, searching for Irv. Tiemann eventually returned, saw Smith, and raised his arm in Smith's direction. Believing Tiemann was pointing a gun in his direction, Smith immediately crouched behind a nearby car. He then made his way to the front of the car, stood up, and shot and killed Tiemann with the stolen handgun. At trial, Smith testified that he found the stolen handgun on the ground in front of the car and shot Tiemann in self-defense. A second gun was never recovered on Tiemann or at the scene.

{¶8} Smith was subsequently indicted on one count of aggravated murder in the course of an aggravated robbery, one count of murder, two counts of felony murder, two counts of aggravated robbery, two counts of felonious assault, and one count of having a weapon while under a disability. Despite his claims of self-defense, a jury found Smith guilty of all counts. After the merger of counts and specifications, Smith was convicted of aggravated murder and having a weapon while under a disability. The trial court sentenced him to 33 years to life for aggravated murder with a gun specification and 36 months for having a weapon while under a disability, to be served consecutively to each other for an aggregate sentence of 36 years to life.

{¶9} Smith filed this timely appeal and raised the following assignments of error:

1. The trial court erred in granting the state's Motion in Limine.

2. The trial court erred to the prejudice of the Defendant in the manner in which peremptory challenges were exercised.

3

3. Mr. Smith is entitled to a new trial because his conviction was against the manifest weight of the evidence.

4. Mr. Smith's conviction for aggravated murder was not supported by sufficient evidence.

5. The trial court erred in sentencing Mr. Smith.

### Law and Analysis

#### I. Motion in Limine

{¶10} In his first assignment of error, Smith argues that the trial court erred in excluding evidence of Tiemann's tattoos and t-shirt. The tattoos included an image of two revolvers, the phrase "White Pride," the statement "You don't know what you are alive for unless you know what you would die for," and an "oriental character that says, 'Boy.' " The t-shirt displayed a chapter of the Aryan Brotherhood. The state contends that defense counsel did not properly raise the issue at trial, and therefore, did not preserve the error for appeal.

{¶11} On the morning of trial, just prior to voir dire, the state presented an oral motion in limine. The state first moved the court to exclude any evidence of Tiemann's tattoos, either through photographs, witness testimony, or the coroner's report. The state argued that such evidence was irrelevant and highly prejudicial where it was not apparent to Smith at the time of the shooting. After further argument, the state also moved the court to exclude any discussion of Tiemann's t-shirt for similar reasons. In response, defense counsel argued that such evidence was "relevant to the state of mind of both [Tiemann] * * * and possibly Mr. Smith in terms of who is the aggressor and who is not."

4

{¶12}   After holding its ruling on the motion in abeyance overnight, the court granted the motion in limine.  Upon defense counsel's request for reconsideration, the court informed the parties,

> I am going to again grant the motion in limine.  I am sticking with my original ruling.  * * * If there is something that comes up in those videos as I see them that shows he said or did something to indicate – "he" not being your client, being the victim – then we will readdress whether or not this line of questioning can go on or the information can be brought in.

{¶13}   It is well-established that "a motion in limine, if granted, is a tentative, interlocutory, precautionary ruling by the trial court." *State v. Grubb*, 28 Ohio St.3d 199, 201-202, 503 N.E.2d 142 (1986).  It reflects the court's anticipatory treatment of the evidentiary issue, and in virtually all circumstances, finality does not attach when the motion is granted.  *Id.* at 202.  Therefore, the granting of a motion in limine does not preserve any error for appellate review, and an appellate court need not decide the propriety of such an order unless a proper objection or proffer is raised at trial. *Id.*

{¶14}   Contrary to the state's assertion, defense counsel did raise the issue at trial.  During direct-examination of the coroner, the state moved to admit select photographs of the autopsy taken of Tiemann.  Defense counsel objected to "incompleteness of photographs of the total autopsy report."  However, despite having received in discovery all of the autopsy photographs and the unredacted autopsy report, defense counsel failed to make a proffer of the evidence.

{¶15}   As noted by the Tenth District:

[A] practical problem arises when a trial court excludes documentary evidence and the complaining party fails to proffer that evidence. Absent a proffer, the appellate court lacks access to the excluded document and, thus, the appellate court cannot evaluate it to determine whether the trial court's decision to exclude it prejudiced the complaining party.

*Ellinger v. Ho*, 10th Dist. Franklin No. 08AP-1079, 2010-Ohio-553, ¶ 35.

{¶16} Because defense counsel failed to proffer the photographs, full autopsy report, and t-shirt, we do not have access to them. Instead, we have access only to the brief descriptions given at the hearing on the oral motion in limine.

{¶17} A failure to proffer excluded exhibits does not always preclude appellate review if the substance of the evidence is otherwise apparent from the record. *See* Evid.R. 103(A); *Ho* at ¶ 34. *Compare State v. Lovelace*, 137 Ohio App.3d 206, 223, 738 N.E.2d 418 (1st Dist.1999) ("We cannot pass on the admissibility of proffered exhibits not before us based solely on the representations of counsel as to what those exhibits contain."). But even if we were to find that the descriptions given at the hearing sufficiently preserved the issue, the trial court did not err in excluding the evidence.

{¶18} Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. Evidence is relevant if it would support a defendant's explanation of the events at issue or would tend to prove a necessary element of an affirmative defense. *State v. Nemeth*, 82 Ohio St.3d 202, 207, 694 N.E.2d 1332 (1998).

{¶19} At trial, the state argued that the perpetrators of the aggravated robbery, one of whom was Smith, created the situation that gave rise to the shooting. Smith did not dispute that the robbery acted as a catalyst for the shooting. He also did not contend that Tiemann pursued him because of his race. He instead argued that he was an innocent bystander to the robbery, as opposed to a perpetrator, and that he acted in self-defense. Therefore, the crux of the case centered on whether Smith was involved in the robbery. Under these circumstances, the initial-aggressor element was not a material fact in issue at trial such that Tiemann's tattoos and clothing were relevant to its determination.

{¶20} Smith's first assignment of error is overruled.

## II. Exercise of Peremptory Challenges

{¶21} In his second assignment of error, Smith argues that peremptory challenges were improperly exercised simultaneously and that defense counsel's questioning of jurors was unreasonably limited. It is undisputed that Smith failed to object to the trial court's manner of conducting jury selection.[1] Therefore, Smith may challenge only the court's limitation of voir dire based on an alleged denial of his final peremptory challenge.

{¶22} Under Crim.R. 24(D), each party may peremptorily challenge four prospective jurors in a felony case. Crim.R. 24(E) provides the manner for exercising peremptory challenges:

Peremptory challenges shall be exercised alternately, with the first challenge exercised by the state. The failure of a party to exercise a

---

[1] However, even if the issue were properly preserved for appeal, the transcript of the proceedings shows that the court complied with the dictates of Crim.R. 24. For each round of peremptory challenges, the court would allow the state to exercise a peremptory challenge first and then allow defense counsel to exercise a peremptory challenge second. Thus, contrary to Smith's assertion, the court did not require simultaneous peremptory challenges.

peremptory challenge constitutes a waiver of that challenge, but does not constitute a waiver of any subsequent challenge. However, if all parties, alternately and in sequence, fail to exercise a peremptory challenge, the joint failure constitutes a waiver of all peremptory challenges.

{¶23} In *State v. Jones*, 2018-Ohio-4754, 124 N.E.3d 439, ¶ 17 (1st Dist.), *appeal accepted on other grounds*, 155 Ohio St.3d 1418, 2019-Ohio-1315, 120 N.E.3d 865, this court interpreted Crim.R. 24(E) to mean that "[a] party's failure to exercise a challenge in turn waives that party's right to that challenge." In effect, Crim.R. 24(E) forces a party to exercise each challenge in turn or lose it. *Id.*; *see State v. Holloway*, 129 Ohio App.3d 790, 798, 719 N.E.2d 70 (10th Dist.1998) (holding that the trial court erred when it permitted the state to exercise a peremptory challenge after it had previously waived its final peremptory challenge).

{¶24} At the beginning of jury selection, 12 potential jurors were seated in the jury box. The prosecutor and defense counsel both questioned the 12 jurors and passed for cause. The trial court then called counsel for both parties to sidebar for the first round of peremptory challenges. The prosecutor and defense counsel each exercised his first peremptory challenge in turn. This process continued until counsel for both parties had each exercised three of their four peremptory challenges. During the fourth round of peremptory challenges, the following exchange occurred:

State: We are going to excuse Number 14.

Court: Number 14 is excused. Number 24 will be brought up.

Defense counsel: So that was 14?

Defense counsel: Going to pass.

Court: You are going to pass. Now for alternates – we still have to do cause on the new one.

8

The prosecutor and defense counsel then questioned prospective juror 24 for cause.

{¶25} As set forth under Crim.R. 24(E), Smith waived his opportunity to exercise his fourth peremptory challenge as to the selection of the prospective jurors. Although Smith lost only his right to that particular challenge, it was his final peremptory challenge. To allow Smith to later exercise his final peremptory challenge would have allowed him to exercise an "extra" peremptory challenge in excess of that allowed by Crim.R. 24. Therefore, the trial court did not err in limiting defense counsel's questioning of prospective juror 24.

{¶26} Smith's second assignment of error is overruled.

### III. Weight and Sufficiency of the Evidence

{¶27} In his third and fourth assignments of error, Smith challenges the weight and sufficiency of the evidence supporting his conviction for aggravated murder. Specifically, Smith contends that the state presented insufficient evidence of his complicity in the commission of the aggravated robbery of Tiemann. He argues that it then follows that the state presented insufficient evidence to convict him of aggravated murder predicated upon that offense.

{¶28} To determine whether a conviction is supported by sufficient evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 274, 574 N.E.2d 492 (1991). In reviewing a challenge to the weight of the evidence, we sit as a "thirteenth juror." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). We must review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice. *Id.*

9

{¶29} Smith was convicted of aggravated murder under R.C. 2903.01(B), which states: "No person shall purposely cause the death of another * * * while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit * * * aggravated robbery[.]" At trial, Smith presented a theory of self-defense. To establish self-defense, the defendant must prove that he was not at fault in creating the situation giving rise to the affray. *State v. Barnes*, 94 Ohio St.3d 21, 24, 759 N.E.2d 1240 (2002). The state contends that, by aiding and abetting Irv in committing the aggravated robbery that gave rise to the shooting, Smith cannot show that he acted in self-defense.

{¶30} " '[T]he mere presence of an accused at the scene of a crime is not sufficient to prove, in and of itself, that the accused was an aider and abettor.' " *State v. Johnson*, 93 Ohio St.3d 240, 243, 754 N.E.2d 796 (2001), quoting *State v. Widner*, 69 Ohio St.2d 267, 269, 431 N.E.2d 1025 (1982). Instead, "the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal." *Johnson* at syllabus. A defendant's criminal intent may be inferred from the circumstances surrounding the crime, including his "presence, companionship, and conduct before and after the offense is committed." (Internal quotations omitted.) *Id.* at 245.

{¶31} Surveillance videos documented Smith and Irv talking several times before the robbery took place. Smith and Irv talked immediately after Irv saw Tiemann's gun; Smith met Irv at Tiemann's motorcycle to observe the gun; Smith, Irv, and Q briefly gathered on Walnut Street; and Irv joined Smith and Tiemann at the robbery location.

{¶32} Surveillance videos and eyewitness testimony further demonstrated Smith's presence, companionship, and assistance during and after the robbery. The videos depicted Smith moving toward Tiemann as Irv grabbed the gun. During Irv's subsequent flight, the video showed Smith inexplicably jump in front of Tiemann's motorcycle as Tiemann drove in the same direction that Irv had fled. Furthermore, the state's witness, Danielle Bullock, observed the robbery's aftermath and described what she saw from her vehicle. She testified to her belief that Smith and Irv were acting together, and in her 911 call, she referred to the perpetrators of the crime as "they"—i.e., Smith and Irv conjointly. Finally, Smith admitted to possessing the fruit of the robbery—Tiemann's gun.

{¶33} Viewing this evidence in a light most favorable to the state, the jury could reasonably have concluded that Smith was complicit in the planning, execution, and flight from the aggravated robbery of Tiemann. Therefore, the state presented sufficient evidence to convict Smith of aggravated murder predicated upon the aggravated robbery.

{¶34} As to the weight-of-the-evidence challenge, Smith asserts that the video provided no substance of the discussions between Irv and Smith, and therefore, no evidence of a plan. "[A]lthough explicit communication can form the foundation for complicity, it can also be established through surrounding circumstances." *State v. Phillips*, 9th Dist. Summit No. 27552, 2017-Ohio-1186, ¶ 19. As described above, the state presented sufficient circumstantial evidence to find that Smith was complicit in the planning of the aggravated robbery of Tiemann. Therefore, the jury was free to interpret the video and conclude that Smith was not an innocent bystander, but an active participant throughout.

{¶35} "[W]hen evidence is susceptible to more than one construction, a reviewing court must give it the interpretation that is consistent with the judgment." (Internal citations omitted.) *In re J.C.,* 1st Dist. Hamilton No. C-180493, 2019-Ohio-4027, ¶ 20. Based upon the evidence, and in light of the entire record and credibility of the witnesses, this is not a case where the jury clearly lost its way and created such a manifest miscarriage of justice that Smith's conviction must be reversed.

{¶36} Smith's third and fourth assignments of error are overruled.

IV. Sentencing

{¶37} In his fifth assignment of error, Smith contends that the sentencing court misinterpreted and improperly considered his allocution statements when imposing a maximum sentence.

{¶38} We lack statutory authority to review the evidentiary basis supporting Smith's sentence for aggravated murder. Pursuant to R.C. 2953.08(D)(3), "[a] sentence imposed for aggravated murder * * * is not subject to review under this section." As interpreted by the Ohio Supreme Court, R.C. 2953.08(D) is "unambiguous" and "clearly means what it says: such a sentence cannot be reviewed." *State v. Porterfield*, 106 Ohio St.3d 5, 2005-Ohio-3095, 829 N.E.2d 690, ¶ 17. But in *Porterfield*, the defendant was sentenced under a prior version of R.C. 2929.03, which provided a mandatory 20-years-to-life sentence for aggravated murder without death specifications. Thus, because the sentencing judge had no choice but to impose only one mandatory sentence, it was rational for the General Assembly to deny appellate review of the sentence.

{¶39} In 2005, the General Assembly enacted new legislation which granted the sentencing judge the discretion to impose one of four sentences: 20-years-to-life, 25-years-to-life, 30-years-to-life, and life without parole. However, the General

12

Assembly never amended R.C. 2953.08(D), which still prohibits appellate review of aggravated-murder sentences.

{¶40} One justice of the United States Supreme Court has found R.C. 2953.08(D)(3)'s prohibition on appellate review to be "deeply concerning," but Smith has not challenged its constitutionality. *Campbell v. United States*, ___ U.S. ___, 138 S.Ct. 1059, 1059, 200 L.Ed.2d 502 (2018) (Sotomayor, J., respecting denial of certiorari) ("I believe the Ohio courts will be vigilant in considering [the constitutionality of R.C. 2953.08(D)(3)] in the appropriate case."). Therefore, we are bound by the dictates of the statute and review of Smith's 33-years-to-life sentence is precluded.

{¶41} However, "nothing in R.C. 2953.08(D) precludes review of an order that sentences imposed to punish general felonies be made consecutive to an aggravated-murder sentence." *State v. Broe*, 1st Dist. Hamilton No. C-020521, 2003-Ohio-3054, ¶ 84. In order to impose consecutive terms of imprisonment, a trial court must make the statutorily enumerated findings required by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry. *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 37. No "talismanic incantation" is given to the words of R.C. 2929.14(C)(4). *Id.* As long as the reviewing court can discern that the trial court engaged in the correct analysis and that the record contains evidence to support the findings, consecutive sentences should be upheld. *Id.* at ¶ 29.

{¶42} At the sentencing hearing, the trial court made all of the mandatory findings pursuant to R.C. 2929.14(C)(4). Specifically, the court stated:

> It is this Court's belief that serving these sentences on Count 1 and Count 9 consecutively is in the best interest of the public, because it's necessary to protect the public, as well as not being disproportionate to the seriousness of [Smith's] conduct and the danger that [Smith] pose[s] to

13

the public, as well as the fact that [Smith] [was] on community control to me when this crime occurred.

{¶43} The court also included all of the R.C. 2929.14(C)(4) findings in its sentencing entry. The evidence supporting these findings included victim-impact statements, probation's presentence-investigation report, Smith's criminal history, and the facts presented at trial. Because the record contains sufficient evidence to support the mandatory consecutive sentence findings, Smith's fifth assignment of error is overruled.

### *Summary*

{¶44} For the foregoing reasons, Smith's assignments of error are overruled and the judgment of the trial court is affirmed.

Judgment affirmed.

**ZAYAS, P.J.,** and **BERGERON, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.