[Cite as *State v. Khamsi*, 2020-Ohio-1472.]

# IN THE COURT OF APPEALS
## FIRST APPELLATE DISTRICT OF OHIO
## HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. C-180405 |
| | | C-180424 |
| Plaintiff-Appellee, | : | C-180425 |
| | | C-180433 |
| vs. | : | C-180426 |
| | | C-180434 |
| AYINDE KHAMSI, a.k.a. AYINDE KHAMISI, | : | TRIAL NOS. B-1705754A, B, C, D |
| | : | *O P I N I O N.* |
| JELANI KHAMISI, | | |
| | : | |
| KIMBERLY KHAMISI, | | |
| | : | |
| and | | |
| | : | |
| KAIA KHAMISI, | | |
| | | |
| Defendants-Appellants. | : | |

Criminal Appeals From: Hamilton County Court of Common Pleas

Judgments Appealed From Are: Affirmed

Date of Judgment Entry on Appeal: April 15, 2020

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Alex Scott Havlin*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

Ayinde Khamsi, a.k.a. Ayinde Khamisi, pro se,

Jelani Khamisi, pro se,

Kimberly Khamisi, pro se,

Kaia Khamisi, pro se.

**WINKLER, Judge.**

{¶1} Defendants-appellants Ayinde Khamsi, a.k.a. Ayinde Khamisi, Jelani Khamisi, Kimberly Khamisi, and Kaia Khamisi (collectively "the Khamisis") appeal convictions for theft under former R.C. 2913.02(A)(3) and tampering with records under R.C. 2913.42(A)(1). Because they were tried together and have filed nearly identical briefs, we have sua sponte consolidated their appeals. We affirm their convictions.

## I. Factual Background

{¶2} Evidence presented at a jury trial showed that the Khamisis had engaged in schemes to steal real property from its rightful owners by filing fraudulent documents. The Khamisis justified their actions by claiming that the properties were abandoned and that they were in the process of establishing ownership through adverse possession.

### A. 3610 Washington Avenue

{¶3} Property located at 3610 Washington Avenue was the former site of the Zion Nursing Care Center. Dr. William Poole was the last remaining member of the board of directors of the nursing home and was attempting to sell the property. Dr. Poole had been devoted to the nursing home and had taken numerous actions to keep it open. He had taken a mortgage on the property in 2008, which was still valid at the time of trial.

{¶4} When Dr. Poole discovered "squatters" on the property, he called an attorney, Michael Gray. According to Gray, Dr. Poole "forgot to file a statement of continuation with the secretary of state" which caused the organization, Zion

Nursing Care Center, to go "inactive." Gray discovered that the Hamilton County auditor showed an entity that Dr. Poole did not recognize as the owner of the property. Prior to trial, Dr. Poole passed away. But both his son and Gray testified that although the nursing home was closed and the building was vacant, the property had never been abandoned.

{¶5} The Khamisis created an entity with a name similar to and using the same address as the Zion Nursing Care Center by filing paperwork with the secretary of state. Those documents were signed by Kimberly, Ayinde, and Jelani. Jelani was named as the statutory agent. They filed additional documents, including a quit-claim deed, in the Hamilton County recorder's office that purported to transfer ownership of the property to other entities they had created. They also filed liens on the property. A representative of the Ohio attorney general's office testified that the Khamisis never registered these alleged charitable entities with the attorney general's office.

{¶6} Detective Cynthia Alexander of the Cincinnati Police Department began investigating the Khamisis. She discovered several organizations that the Khamisis used in an attempt to gain control of the property at 3610 Washington Avenue.

{¶7} Kimberly filed a quiet-title action against "Zion Nursing Home, Inc." and "Zion Care Center, Inc." alleging that she had rightful possession of the property. The trial court in that case determined that Kimberly and her associated entities had no interest in the property and ordered the Hamilton County recorder's office to strike the quit-claim deed.

### B. 215 Mitchell Avenue

{¶8}    Property at 215 Mitchell Avenue was owned by Ruby Red Services, LLC, a business incorporated by Melissa Meade.  Meade later died in a car accident, and the house was vacant.  Visio Mortgage Services held a mortgage on the property and began foreclosure proceedings. Claiming the property was abandoned, Jelani occupied the property.  Subsequently, he and Kimberly filed multiple documents asserting an interest in the property, including a quit-claim deed.  Several of the documents were filed after a court had refused to let them intervene in the foreclosure proceedings.

### C. 453 Sheffield Road

{¶9}    The Anderson family owned property located at 453 Sheffield Road. Marsha Anderson testified that it was her parents' house, in which she had been raised.  When her mother passed away, she left the property to Marsha and her siblings.  Marsha moved out of the home in 2010, leaving it vacant, but continued to make mortgage payments on the home.

{¶10}  Claiming the property was abandoned, Jelani occupied the property. In 2017, he filed a quiet-title action naming all the Anderson siblings as the defendants.  A notice about the lawsuit was sent to Marsha's brother, Michael, who was deceased, at the Sheffield Avenue address.  Jelani's complaint was dismissed when he failed to appear for trial.

{¶11}  Marsha did not know about the action until Detective Alexander notified her about it.  She testified that the property was not abandoned and that the quiet-title action was hurtful because the property had belonged to her parents, and she and her sister had taken care of their parents there.

4

{¶12}  When he filed the quiet-title action, Jelani also filed an affidavit of indigency, in which he claimed had no income.  In reality, he was employed by Stepping Stones, a nonprofit agency.  He earned $18,979 in 2015, $22,591 in 2016, and $22,574 in 2017.

### D.  533 Glenwood Avenue

{¶13}  Melissa Sherrod owned the property located at 533 Glenwood Avenue. Melissa's husband, Shareef Sherrod, testified that he was a real estate broker and investor who bought and rehabbed vacant properties, mostly single-family homes. The properties were put in his wife's name because it was easier for her to get financing, but he was the one who operated the business.  He and his wife purchased the property in 2011 with the intent to renovate it and then rent it.  He had contractors come out to look at the property for bids.  Shereef made sure that the grass was cut every two to three weeks.  He secured the property with a lockbox, sealed the windows, and had a neighbor watch out for trespassers.

{¶14}  Ayinde occupied the property, and filed a quiet-title action naming Melissa as a defendant, in which he contended that he had an interest in the property.  He also filed an affidavit of indigency.  Ayinde's complaint was eventually dismissed for want of prosecution.

{¶15}  The Sherrods had no notice of the action.  They only learned of it when Detective Alexander contacted them.  Shareef hired an attorney and paid her $500.  He testified that he never gave anyone permission to take the property, and he had not abandoned it.  He eventually sold the property and received the proceeds.

### E. 4945 Paddock Road

{¶16}  Terrence Davis owned property located at 4945 Paddock Road.  Davis owned a construction company and bought the property to remodel either as a daycare or "living units."  The property was vacant when he bought it.  He sealed it with a steel door that could not be entered.

{¶17} Davis had not yet started working on the property, but roofing material had been delivered and was sitting on the roof, when he saw one man and two women walking about the property and looking in the windows.  Subsequently, he began the process of cleaning out the property and putting on a new roof.

{¶18}  Kaia filed a quiet-title action, naming Davis as a defendant, along with an affidavit of indigency.  He received notice of the action in his post-office box.  Davis hired an attorney and filed an answer.  His attorney made some phone calls and learned of the police's investigation into similar transactions.  He testified that no one had his consent to come onto the property and that it was not abandoned.  Kaia's complaint was eventually dismissed for want of prosecution.

### F. 200 Clinton Springs

{¶19}  Brenda Willis owned property located at 200 Clinton Springs, which used to be her parents' house.  On January 6, 2017, Kimberly filed a quiet-title action naming as defendants Brenda and her husband, Charles Willis, although only Brenda's name was on the deed.  Kimberly also filed an affidavit of indigency.

{¶20}  Brenda stated that her siblings were living in the house until January 2018, and that none of the claims in Kimberly's complaint were true.  She and her husband both filed answers, after which Kimberly dismissed her complaint.  Brenda

6

also stated that the property was not abandoned, and she had never given anyone permission to enter the property.

### G. 3944 Vine Street

{¶21} Kimberly filed a quiet-title action for property located at 3944 Vine Street, along with an affidavit of indigency. She claimed that the property was abandoned, and she was the possessor of the property. Anchor Holdings, LLC, was the property's owner. The quiet-title action was dismissed because Kimberly never obtained service on Anchor Holdings. Detective Alexander was unable to locate a representative for the company.

### H. 1595 Summit Avenue

{¶22} Michael West incorporated 4 Kennedy, LLC, a real estate business, to make money to pay for his daughter's college tuition. He bought property at 1595 Summit Road in 2015 and began renovations. Kimberly filed a quiet-title action alleging that the property was abandoned and that she had entered the property and claimed title to it.

{¶23} West did not find out about the action until Detective Alexander contacted his wife. He stated that he had not abandoned the property and that he believed that "somebody was trying to steal [his] property." The quiet-title action was dismissed when Kimberly failed to show up for court. Detective Alexander stated that at that time, Kimberly was aware that the Cincinnati Police Department was investigating the Khamisis.

### I. 10508 Toulon Drive

{¶24} James and Imogene Bronson had owned property at 10508 Toulon Drive. The Bronsons passed away, and the survivor identified in the deed was Michelle Reed. Wells Fargo Bank had initiated a foreclosure proceeding. Kimberly filed a quiet-title action against the Bronsons, Reed, and Wells Fargo, along with an affidavit of indigency. She claimed that the property was abandoned and that she was in possession. She also claimed that Wells Fargo did not have a valid mortgage. The case was dismissed for want of prosecution.

### J. The Convictions

{¶25} Kimberly was convicted of three counts of tampering with records and three counts of theft. She was sentenced to three years in prison. Jelani was convicted of three counts of tampering with records and three counts of theft. He was sentenced to one year in prison. Ayinde was convicted of two counts of tampering with records and two counts of theft. He was sentenced to two years in prison. Kaia was convicted of one count of tampering with records and one count of theft. She was sentenced to one year in prison. These appeals followed.

### II. Structural Error

{¶26} The Khamisis each present four identical assignments of error for review. In all of these assignments of error, they contend that the trial court committed structural error. A structural error is a constitutional defect that affects the framework within which the trial proceeds, rather than being an error in the trial process itself. *State v. Clinton*, 153 Ohio St.3d 422, 2017-Ohio-9423, 108 N.E.3d 1, ¶ 198; *State v. Jones*, 2018-Ohio-4754, 124 N.E.3d 439, ¶ 19 (1st Dist.). Because a

8

structural error is deemed prejudicial per se, it requires an automatic reversal. *State v. Davis*, 127 Ohio St.3d 268, 2010-Ohio-5706, 939 N.E.2d 147, ¶ 22; *State v. Furr*, 1st Dist. Hamilton No. C-170046, 2018-Ohio-2205, ¶ 3. Most constitutional errors are not structural, and structural errors have been recognized only in limited classes of cases. *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶ 18; *Furr* at ¶ 4; *Jones* at ¶ 20.

{¶27} In determining whether an error is structural, the threshold inquiry is whether the error involves deprivation of a constitutional right. *State v. Fisher*, 99 Ohio St.3d 127, 2003-Ohio-2761, 789 N.E.2d 222, ¶ 18; *Jones* at ¶ 21. "[T]he trial-error/structural-error distinction is irrelevant unless it is first established that constitutional error has occurred." *Jones* at ¶ 21, quoting *State v. Esparza*, 74 Ohio St.3d 660, 662, 660 N.E.2d 1194 (1996).

### III. Indictment

{¶28} In their first assignments of error, the Khamisis contend that the trial court committed structural error "by Creating a Fatal Variance Between the Grand Jury's Indictment and the Bill of Particulars and Evidence * * *." They argue that the indictments failed to give them adequate notice of the alleged criminal conduct with which they were charged, that they were not supported by sufficient facts, and that they were falsely procured by the prosecutor. These assignments of error are not well taken.

{¶29} Under the United States and Ohio Constitutions, an individual accused of a felony is entitled to an indictment setting forth the "nature and cause of the accusation." *State v. Sellards*, 17 Ohio St.3d 169, 170, 478 N.E.2d 781 (1985); *State v. Lukacs*, 188 Ohio App.3d 597, 2010-Ohio-2364, 936 N.E.2d 506, ¶ 41 (1st Dist.).

The government must aver all material facts constituting the essential elements of the offense so that the accused has adequate notice and an opportunity to defend. *Sellards* at 170; *Lukacs* at 41. But the indictment need not contain a recitation of the evidence supporting the various facts. *Lukacs* at ¶ 41; *State v. Gingell*, 7 Ohio App.3d 364, 366, 455 N.E.2d 1066 (1st Dist.1982). Generally, the requirements of an indictment may be met by reciting the language of the criminal statute. *State v. Childs*, 88 Ohio St.3d 194, 199, 724 N.E.2d 781 (2000).

{¶30} In this case, the indictments tracked the language of the applicable statutes. Therefore, the Khamisis can demonstrate no error. *See State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, 819 N.E.2d 215, ¶ 26; *State v. Murphy*, 65 Ohio St.3d 554, 583, 605 N.E2d 884 (1992).

{¶31} Further, each of the Khamisis was supplied with a bill of particulars. The accused can obtain more specific details by requesting a bill of particulars as provided in Crim.R. 7(E). But the bill of particulars need not provide the accused with specifications of the evidence or serve as a substitute for discovery. *Sellards* at 171; *Lukacs* at ¶ 43; *Gingell* at 367. The indictments and the bills of particulars together were sufficient to apprise the Khamisis of the charges against them. Therefore, they did not give rise to any error, much less structural error. *See State v. Roberts*, 1st Dist. Hamilton Nos. C-040575 and C-050005, 2005-Ohio-4848, ¶ 9, *reversed on other grounds*, *In re Criminal Sentencing Statutes Cases*, 109 Ohio St.3d 313, 2006-Ohio-2109, 817 N.E.2d 1174.

{¶32} The Khamisis claimed throughout trial that they had no notice of the offenses with which they were charged. The record shows that they were provided with discovery, and that their claims that they had no notice were trial tactics. They were well aware of the factual basis of the charges against them. They took great

offense that the bill of particulars described them as "squatters," and they argue that squatting is not necessarily illegal. The purpose of the bill of particulars is to provide notice. The use of the word is not improper, but even if it were, its use did not affect the validity of the notice.

{¶33} The Khamisis also argue that the indictments were not supported by sufficient and credible evidence. The grand jury, in inquiring into crimes and offenses returning indictments, does not exercise a judicial function. An indictment and subsequent proceedings based on that indictment are not rendered invalid on the ground that illegal and incompetent testimony was heard by the grand jury. *Villasino v. Maxwell*, 174 Ohio St. 483, 484-485, 190 N.E.2d 265 (1963); *State v. Cunningham*, 1st Dist. Warren No. 54, 1975 WL 181079, *4 (Dec. 29, 1975); *Wickline v. Alvis*, 103 Ohio App. 1, 9-10, 144 N.E.2d 207 (10th Dist.1957).

{¶34} Thus, an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence. *United States v. Calandra*, 414 U.S. 338, 344-345, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974); *State v. Blalock*, 8th Dist. Cuyahoga Nos. 80419 and 80420, 2002-Ohio-4580, ¶ 24. "An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by a prosecutor, if valid on its face, is enough to call for the trial of the charge on the merits." *Villasino* at 485; *Blalock* at ¶ 24.

{¶35} In this case, the indictments were valid on their faces. Therefore, the Khamisis cannot challenge the evidence supporting the indictments. It appears they are actually trying to challenge the weight and sufficiency of the evidence at trial, but they have not raised assignments of error to that effect. Because they failed to raise assignments of error challenging the weight and sufficiency of the evidence, we need

not address those issues. *See State v. Harris*, 2017-Ohio-5594, 92 N.E.3d 1283, ¶ 43 (1st Dist.).

**{¶36}** Finally, under these assignments of error, the Khamisis argue that their not-guilty pleas were entered against their wishes. Crim.R. 11(A) provides that if a defendant refuses to plead, the court shall enter a plea of not guilty on behalf of the defendant. A not-guilty plea does not admit any facts and does not waive any of the defendant's rights, including the right to have the prosecution prove its case beyond a reasonable doubt. *State v. Schaeffer*, 12th Dist. Warren No. CA92-04-038, 1993 WL 106146, *1 (Apr. 12, 1993). Because the Khamisis refused to enter pleas, the court could do so on their behalf and they were not prejudiced by the application of this rule. *See Cleveland Metroparks v. Sferra*, 8th Dist. Cuyahoga No. 106341, 2018-Ohio-3169, ¶ 22. Consequently, we overrule the Khamisis' first assignments of error.

### IV. Self-Representation

**{¶37}** In their second assignments of error, the Khamisis argue that the court committed structural error by denying them the right to represent themselves. Both the United States Supreme Court and the Ohio Supreme Court have recognized a criminal defendant's right to represent himself or herself at trial without counsel when the defendant knowingly, intelligently, and voluntarily chooses to waive counsel. *See Faretta v. California*, 422 U.S. 806, 819-820, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *State v. Martin*, 103 Ohio St.3d 385, 2004-Ohio-5471, 816 N.E.2d 227, ¶ 23-24; *Furr*, 1st Dist. Hamilton No. C-170046, 2018-Ohio-2205, at ¶ 6. The right to represent oneself is "thwarted when counsel is forced upon an unwilling defendant, who alone bears the risks of a potential conviction." *State v. Obermiller*, 147 Ohio

12

St.3d 175, 2016-Ohio-1594, 63 N.E.3d 93, ¶ 26. The denial of the right to self-representation has been found to be structural error. *Furr* at ¶ 4.

{¶38} The record does not show that the Khamisis were denied their rights to represent themselves. Originally, the trial court had recognized their rights to represent themselves and had advised them it was bad idea. Subsequently, the Khamisis refused to sign written waivers of counsel, although they had indicated that they wished to represent themselves. The trial court, believing that a written waiver was required, told them they would be appointed lawyers.

{¶39} Crim.R. 44 governs the procedure for waiver of counsel in "serious offense" cases. A "serious offense" includes any felony. Crim.R. 2(C). Under Crim.R. 44(A), when a defendant is unable to obtain counsel, counsel must be assigned to represent the defendant in all stages of the proceedings, unless the defendant, after being fully advised of his right to counsel, knowingly, intelligently, and voluntarily waives his right to counsel. *Furr* at ¶ 7. The waiver must be made in open court and must be in writing. Crim.R. 44(C).

{¶40} But, the written waiver is not constitutionally required, so a trial court needs only to substantially comply with Crim.R. 44. *Martin*, 103 Ohio St.3d 385, 2004-Ohio-5471, 816 N.E.2d 227, at ¶ 38; *Furr*, 1st Dist. Hamilton No. C-170046, 2018-Ohio-2205, at ¶ 8. A court substantially complies with Crim.R. 44 when it makes a sufficient inquiry to determine whether the defendant fully understands and intelligently relinquishes the right to counsel. *Martin* at ¶ 39; *Furr* at ¶ 8.

{¶41} At the next hearing, the trial court stated that it had made a mistake because only substantial compliance with Crim.R. 44 was required. It then informed the Khamisis of the nature of the charges, the range of allowable punishments, possible defenses to the charges and "the other facts essential to a broad

understanding of the whole matter." *See State v. Gibson*, 45 Ohio St.2d 366, 377, 345 N.E.2d 399 (1976); *Furr* at ¶ 9. It also explained the disadvantages of self-representation and that they would be required to follow the same rules and procedures that normally govern the conduct of a trial. *See Furr* at ¶ 9; *State v. Murphy*, 1st Dist. Hamilton No. C-170390, 2018-Ohio-1063, ¶ 6. The court then determined that they knowingly, intelligently and voluntarily waived their rights to counsel.

{**¶42**} The Khamisis then represented themselves throughout the trial. Many of the issues of which they now complain were the result of their inexperience and lack of counsel. A defendant who elects to represent himself cannot complain about the quality of his own defense. *Faretta*, 422 U.S. at 834, 95 S.Ct. 2525, 45 L.Ed.2d 562, fn. 46.

{**¶43**} One of the Khamisis' complaints involves an order the trial court journalized early in the proceedings. The court ordered the clerk of courts to remove the case completely from display on the clerk's website. It also stated that all parties had to seek leave of court before obtaining copies of any filings in the case. The record shows that the court made that order because the Khamisis had attempted to evade arrest, and they were not all arrested at the same time.

{**¶44**} The case was later assigned to a visiting judge. When the Khamisis argued that the order prevented them from defending themselves, the court said that "my interpretation was that some documents were being attempted to be filed in this case while one or more of you had an outstanding warrant; that was the rationale that I thought for the issuance of that order." The court agreed to rescind the order, which was vacated less than four months after it was journalized.

{¶45} The court also offered to grant a continuance. The Khamisis initially refused and argued about the alleged lack of notice and jurisdiction. After a lot of back-and-forth, the court granted a continuance. In fact, the court went to great lengths to ensure that the Khamisis received transcripts of the various hearings and had access to the internet at the jail. Thus, they were not prevented from preparing a defense.

{¶46} Next, the Khamisis argue that because they represented themselves they were forced to appear in front of the jury in jail garb. Courts have recognized that a defendant may be prejudiced by appearing in jail clothing, but a defendant may purposefully elect, as a matter of trial strategy, to stand trial in that attire. *See Estelle v. Williams*, 425 U.S. 501, 504-505, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976); *State v. Gandy*, 1st Dist. Hamilton No. C-050804, 2006-Ohio-6282, ¶ 4. There is no rule requiring all convictions in which the defendant has worn jail clothing be overturned. Instead, the inquiry focuses on whether the accused's appearance before the jury was compelled. *Gandy* at ¶ 4.

{¶47} The Khamisis raised the issue about the same time that they were arguing about the order removing the case from the clerk of court's website, which did not allow the parties to file any documents at that time without leave of court. Kaia said that she had asked her caseworker about wearing regular clothing, and the caseworker had said they could not "do anything" without an order from the trial court. The trial court stated, "See, this is one of the major disadvantages you have by not having an attorney, because the attorney would immediately ask that you be permitted to wear civilian clothes." Then a public defender who was involved in the case said that his office had a bank of clothes and "we can try to get them in civilian clothes if they are interested." They all said they were not interested.

{¶48} Thus, they were not compelled to appear before the jury in jail clothing. They chose to do so. Further, the court said that it would instruct the jury that it should not hold the fact that they were wearing prison garb against them. The Khamisis said they didn't want the instruction as they were preparing their own jury instructions.

{¶49} The Khamisis further argue that the prosecutor addressed the issue even though he was instructed not to, which is untrue. Moreover, the prosecutor merely told the potential jurors during voir dire that "[t]he State and the Court have also offered these defendants [the] right to not appear in jail garb as well; that was their choice to do that, and you will not hold that against them, will you?" Therefore, the Khamisis were not prejudiced.

{¶50} Next, the Khamisis argue that their family member, Kijai, was denied the right to advise them and to file documents on their behalf. They also argue that she was imprisoned for three days without probable cause. The record shows that the trial court found her in contempt for giggling and laughing in the court room and interrupting the court. Nothing in the record shows that that finding of contempt was improper. Moreover, the Khamisis lacked standing to raise the issue of the validity of that contempt finding. Litigants may assert their own rights, not the rights of third parties. *Util. Serv. Partners, Inc. v. Pub. Util. Comm.*, 124 Ohio St.3d 284, 2009-Ohio-6764, 921 N.E.3d 1038, ¶ 49; *In re K.C.*, 2017-Ohio-8383, 99 N.E.3d 1061, ¶ 5 (1st Dist.).

{¶51} Further, while the Khamisis had the right to represent themselves, they did not have the right to have a nonattorney advise them or file anything on their behalf. Only a licensed attorney may file pleadings on behalf of another in

court. R.C. 4705.o1; *State ex rel. Army of Twelve Monkeys v. Warren Cty. Ct. of Common Pleas*, 156 Ohio St.3d 346, 2019-Ohio-901, 126 N.E.3d 1113, ¶ 5.

{**¶52**} Finally, the Khamisis make numerous references to excessive bail. Habeas corpus is the proper remedy to raise a claim of excessive bail in pretrial-release cases. *Chari v. Vore*, 91 Ohio St.3d 323, 325, 744 N.E.2d 763 (2001); *State v. Towns*, 8th Dist. Cuyahoga No. 88059, 2007-Ohio-529, ¶ 20. After conviction, any error concerning pretrial bail is moot, and the issue cannot be raised on direct appeal. *State v. Knisley*, 2d Dist. Montgomery No. 22897, 2010-Ohio-116, ¶ 25; *Towns* at ¶ 20. Consequently, we overrule the Khamisis' second assignments of error.

### V. Impartial Judge/Jurisdiction

{**¶53**} In their third assignments of error, the Khamisis argue that the trial court committed structural error by denying their right to an impartial judge. They argue that the trial court was biased against them, ignored jurisdiction, denied their right to represent themselves, set excessive bail, and misstated the law and the facts. These assignments of error are not well taken.

{**¶54**} First, as a general rule, a direct appeal is not the proper place to raise an argument that the trial judge was biased. The proper avenue for redress when a party believes that a trial judge is biased is the filing of an affidavit of bias and prejudice with the Supreme Court of Ohio as provided for in R.C. 2701.03. *Gandy*, 1st Dist. Hamilton No. C-050804, 2006-Ohio-6282, at ¶ 22. The Khamisis filed affidavits of bias and prejudice against the original trial judge, which the Ohio Supreme Court denied.

17

{¶55} But even if we address the merits of the issue, the Khamisis' arguments still fail. A trial before a judge who is not impartial results in structural error that would require reversal without a harmless-error analysis. *State v. Sanders*, 92 Ohio St.3d 245, 278, 750 N.E.2d 90 (2001); *State v. Buck*, 2017-Ohio-8242, 100 N.E.3d 118, ¶ 82 (1st Dist.). The Ohio Supreme Court has described judicial bias as "a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as contradistinguished from an open state of mind which will be governed by the law and facts." *Buck* at ¶ 83, quoting *State ex rel. Pratt v. Weygandt*, 164 Ohio St. 463, 132 N.E.2d 191 (1956), paragraph four of the syllabus.

{¶56} A trial court is presumed to be fair and impartial. *In re Disqualification of Kilpatrick*, 47 Ohio St.3d 605, 606, 546 N.E.2d 929 (1989); *Gandy* at ¶ 23. The Khamisis have failed to overcome this presumption relating to the original trial judge or the visiting judge. The judges' failure to provide the relief to which the Khamisis believe they were entitled does not establish actual bias. *See State v. Jackson*, 149 Ohio St.3d 55, 2016-Ohio-5488, 73 N.E.3d 414, ¶ 40. Further, the fact that the Khamisis had filed litigation against the judges or that the judges had presided over the civil quiet-title actions, without more, does not establish bias. *See In re Disqualification of Pokorny*, 135 Ohio St.3d 1268, 2013-Ohio-915, 986 N.E.2d 993, ¶ 4; *In re Disqualification of Bryant*, 117 Ohio St.3d 1251, 2006-Ohio-7227, 885 N.E.2d 246, ¶ 4.

{¶57} The Khamisis argue that both judges ignored their motions. Both judges simply refused to reconsider the same motions they had already ruled on that the Khamisis continued to raise time and again. When a court fails to rule on a

pending motion, we presume that the court elected to overrule it. *State v. Smith*, 1st Dist. Hamilton Nos. C-180439 and C-180604, 2019-Ohio-5350, ¶ 13.

**{¶58}** Next, the Khamisis contend that the visiting judge imposed his own morality upon the proceedings. The remarks about which they complain occurred at the sentencing hearing where the judge asked how they could morally justify taking other people's property. This is a proper consideration at sentencing. *See State v. Arnett*, 88 Ohio St.3d 208, 221-222, 724 N.E.2d 302 (2000); *State v. Brown*, 11th Dist. Geauga No. 2003-G-2504, 2004-Ohio-1843, ¶ 35; *State v. Golson*, 2d Dist. Montgomery No. 17707, 2001 WL 227372, *7 (Mar. 9, 2001).

**{¶59}** The Khamisis argue that even though the visiting judge tried the case, they were prejudiced because the bailiff was the original trial judge's sister, which they did not learn until after trial. Much of this argument involves matters outside the record on appeal, which we cannot consider. *See State v. Ishmail*, 54 Ohio St.2d 402, 405-406, 377 N.E.2d 500 (1978); *State v. Dieterle*, 1st Dist. Hamilton No. C-070796, 2009-Ohio-1888, ¶ 49. Nothing in the record shows that the bailiff influenced the jury or acted in a way to deny the Khamisis a fair trial.

**{¶60}** Finally, the Khamisis argue that both judges ignored their lack of jurisdiction, which was actually the crux of their arguments throughout the proceedings. They fail to understand the nature of subject-matter jurisdiction. Subject-matter jurisdiction involves a court's power to hear a case. *State v. Mbodj*, 129 Ohio St.3d 325, 2011-Ohio-2880, 951 N.E.2d 1025, ¶ 10.

**{¶61}** Section 4(B), Article IV of the Ohio Constitution provides that "[t]he courts of common pleas and divisions thereof shall have such original jurisdiction over all justiciable matters and such powers of review of proceedings as may be provided by law." R.C. 2931.03 provides that jurisdiction over all crimes and

offenses is vested in the court of common pleas, general division, unless jurisdiction is specifically and exclusively vested in other divisions of the court or in the lower courts. *State ex rel. McMinn v. Whitfield*, 27 Ohio St.3d 4, 5, 500 N.E.2d 875 (1986). Moreover, "[a]bsent a patent and unambiguous lack of jurisdiction, a court with general subject-matter jurisdiction may determine its own jurisdiction." *State ex rel. Brown v. Luebbers*, 137 Ohio St.3d 542, 2013-Ohio-5062, 1 N.E.3d 395, ¶ 12. The court had jurisdiction to hear the case, and the fact that it did not agree with the Khamisis' arguments does not mean that the court lacked jurisdiction.

{¶62} In sum, nothing in the record shows that the trial court violated its duty of impartiality or behaved in a way that deprived the Khamisis of a fair trial. *See State v. Brewster*, 1st Dist. Hamilton Nos. C-030024 and C-030025, 2004-Ohio-2993, ¶ 68-69; *State v. Johnson*, 140 Ohio App.3d 385, 391-392, 747 N.E.2d 863 (1st Dist.2000). Consequently, we overrule the Khamisis' third assignments of error.

### V. Public Trial/Jury Issues

{¶63} In their fourth assignments of error, the Khamisis contend that the trial court committed structural error by denying their rights to a public trial, a jury of their peers, and a fair trial. They argue that the trial court ignored jurisdiction, denied them their rights to represent themselves, set excessive bail, misstated the law and facts, and failed to be impartial. These assignments of error are not well taken.

{¶64} Some of arguments the Khamisis make under these assignments of error are a rehash of arguments we have already rejected. As to the right to a public trial, the United States and Ohio Constitutions guarantee an accused the right to a public trial. *Waller v. Georgia*, 467 U.S. 39, 46, 104 S.Ct. 2210, 81 L.Ed.2d 31

(1984); *State v. Wilks*, 154 Ohio St.3d 359, 2018-Ohio-1562, 114 N.E.2d 1092, ¶ 64. The violation of the right to a public trial is considered structural error and not subject to the harmless-error analysis. *Waller* at 49-50; *State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.3d 1038, ¶ 50.

{¶65} The right to a public trial is not absolute, and in some instances, must yield to other interests. The trial court has broad discretion to exercise control over the proceedings. The court may order the exclusion of spectators as long as it does not inappropriately deny the defendant's right to a public trial. *Drummond* at ¶ 51; *State v. Curtis*, 1st Dist. Hamilton No. C-150174, 2016-Ohio-1318, ¶ 17.

{¶66} The record does not show that the trial court closed the courtroom. Prior to voir dire, the Khamisis claimed that they were told that nobody, with the exception of Kimberly's mother and her "counselor," would be able to attend. The trial court indicated that it had concerns about the lack of space for potential jurors. It stated that "[w]ell, that was for purposes of voir dire, and that's just a matter of we've got no place to put anybody." It went on, "I have no problem with anybody being in here as long as they don't pose a security risk. * * * I don't care if you fill up with your community or other people or the general public."

{¶67} The Khamisis complained that "[i]t wasn't relayed that way" and "it's too late, because it's now the jury selection process and my community is not here that's too late for that one." The court replied that "as soon as we get the jury, hopefully one of your people can let the community know that they're welcome to be here."

{¶68} Federal courts have held that exclusion of a defendant's friends or family members because of a lack of space does not deprive the defendant of the right to a public trial. *See Bunn v. Lopez*, E.D.Cal. No. 2:11-cv-1373, 2016 WL

4010038, 8-9 (July 26, 2016): *Benabe v. United States*, 68 F.Supp. 858, 867-868 (N.D.Ill.2014). Moreover, the record is inconclusive as to whether any one was actually excluded from the courtroom at any time. We cannot hold, without more, that the Khamisis were denied the right to a public trial. *See State v Williams*, 9th Dist. Summit No. 26014, 2012-Ohio-5873, ¶ 10.

{¶69} Next, the Khamisis argue that they were denied a jury of their peers because none of the jurors were aware of the doctrine of adverse possession. A jury of one's peers means a jury drawn from a fair cross section of the community. *Taylor v. Louisiana*, 419 U.S. 522, 527, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975); *State v. Seymour*, 5th Dist. Richland No. 03-CA-37, 2004-Ohio-3835, ¶ 53. A defendant is entitled to a qualified panel of citizens "selected by the best method that thoughtful men, who are cognizant of the practicalities of selection and the inherent problems involved, have been able to develop." *State v. McCarter*, 1st Dist. Hamilton No. C-830823, 1984 WL 6715, *2 (July 25, 1984), quoting *State v. Strodes*, 48 Ohio St.2d 113, 115, 357 N.E.2d 375 (1976), *vacated on other grounds*, 438 U.S. 911, 98 S.Ct. 3135, 57 L.Ed.2d 1154 (1978).

{¶70} To establish a violation of this requirement, the defendant must prove, among other things, that the group alleged to be excluded is a distinctive group in the community. *State v. Fulton*, 57 Ohio St.3d 120, 566 N.E.2d 1195 (1991), paragraph two of the syllabus; *State v. Ford*, 5th Dist. Stark No. 2014CA00145, 2015-Ohio-4093, ¶ 19. People aware of adverse possession are not a distinctive group in the community. A criminal defendant has no affirmative right to a jury of a particular racial, gender or age composition, much less one aware of certain legal doctrines. *See Seymour* at ¶ 54. Thus, the Khamisis have to failed show that they were not tried by a jury of their peers.

**{¶71}** Finally, the Khamisis argue that they were denied a fair trial because the jury was not instructed on the issue of adverse possession. The trial court must fully and completely give all jury instructions that are relevant and necessary for the jury to weigh the evidence and to discharge its duty as the trier of fact. *State v. Comen*, 50 Ohio St.3d 206, 553 N.E.2d 640 (1990), paragraph two of the syllabus; *State v. Robinson*, 1st Dist. Hamilton No. C-060434, 2007-Ohio-2388, ¶ 18. A trial court must give a defendant's requested instructions to the jury if they are correct, pertinent statements of law and are appropriate under the facts of the case. *State v. Lessin*, 67 Ohio St.3d 487, 493, 620 N.E.2d 72 (1993); *Brewster*, 1st Dist. Hamilton Nos. C-030024 and C-030025, 2004-Ohio-2993, at ¶ 58.

**{¶72}** The Khamisis' defense at trial was that the properties were abandoned and they were in the process of establishing adverse possession of the properties. The trial court instructed the jury regarding whether property was abandoned, but refused to give an instruction on adverse possession because the evidence did not warrant it. We agree with the trial court's decision.

**{¶73}** Adverse possession is disfavored in the law, as it is in contravention of the ideals set forth in the Constitution protecting life, liberty and property. *Houck v. Bd. of Park Commrs. of the Huron Cty. Park Dist.*, 116 Ohio St.3d 148, 2007-Ohio-5586, 876 N.E.2d 1210, ¶ 29; *Grace v. Koch*, 1st Dist. Hamilton No. C-950802, 1996 WL 577843, *2-3 (Oct. 9, 1996), *affirmed*, 81 Ohio St.3d 577, 692 N.E.2d 1009 (1998). Title is strictly construed in favor of the person holding legal title and against the adverse claimant. *Grace* at *3.

**{¶74}** A person seeking to establish adverse possession must show exclusive possession that is open, notorious, continuous, and adverse for 21 years. *Evanich v. Bridge*, 119 Ohio St.3d 260, 2008-Ohio-3820, 893 N.E.2d 481, ¶ 7; *Grace* at *3. The

Khamisis, by their own admission, had not been in possession of any of the properties for 21 years. Therefore, an instruction on adverse possession was not supported by the evidence.

**{¶75}** Despite their attempts to justify their conduct, the record is clear that they were never anything but trespassers and had no legal interest in the properties at all. They cannot show that they were entitled to the properties by adverse possession. "A claim for continuing trespass may be brought at any time until the claim has ripened into a presumptive right by adverse possession, which takes 21 years." *Reith v. McGill Smith Punshon, Inc.*, 163 Ohio App.3d 709, 2005-Ohio-4852, 840 N.E.2d 226, ¶ 50 (1st Dist.).

**{¶76}** Simply put, attempting to establish adverse possession is not a defense to a charge of theft or tampering with records. The trial court did not err in refusing to instruct the jury on adverse possession. The Khamisis were not denied their rights to a fair trial, and we overrule their fourth assignments of error.

### *VI. Summary*

**{¶77}** In sum, we find no merit in any of the Khamisis' assignments of error. They have not demonstrated that the trial court committed reversible error, much less structural error. Therefore, we overrule all of their assignments of error, and we affirm the trial court's judgments.

Judgments affirmed.

**MOCK, P.J.,** and **CROUSE, J.,** concur.

Please note:
    The court has recorded its own entry this date.