[Cite as *State v. Stumph*, 2021-Ohio-723.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-190318 |
| | | TRIAL NO. B-1607280 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| MICHAEL STUMPH, | : | |
| Defendant-Appellant. | : | |


Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: March 12, 2021


*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Philip R. Cummings*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Krista M. Gieske* and *Lora D. Peters*, Assistant Public Defenders, for Defendant-Appellant.

**MYERS, Judge.**

{¶1}   Defendant-appellant Michael Stumph pled guilty to aggravated murder in violation of R.C. 2903.01(B) and was sentenced to life imprisonment without the possibility of parole.  Stumph appeals, arguing that his guilty plea was not knowingly, intelligently, and voluntarily entered, that the trial court erred in imposing a sentence of life without the possibility of parole, that the cumulative effect of the errors tainting his guilty plea and the sentencing hearing require reversal of his conviction, and that R.C. 2953.08(D)(3), which prohibits the review of sentences imposed for aggravated murder, is unconstitutional.

{¶2}   For the reasons set forth below, we decline to address Stumph's constitutional challenges to R.C. 2953.08(D)(3).  And finding Stumph's remaining assignments of error to be without merit, we affirm the trial court's judgment.

### *Factual and Procedural Background*

{¶3}   In November of 2016, Otto Stewart was brutally murdered in his home during the course of a robbery.  For his role in these crimes, Stumph was indicted for aggravated murder with an accompanying death-penalty specification, murder, and two counts of aggravated robbery.

{¶4}   Stumph pled guilty to aggravated murder.  In return for Stumph's guilty plea, the death-penalty specification and remaining charges were dismissed.  Following a sentencing hearing, the trial court imposed a sentence of life imprisonment without the possibility of parole.

*Stumph's Plea was Voluntary*

{¶5}    In his first assignment of error, Stumph argues that his guilty plea was not entered knowingly, voluntarily, and intelligently.

{¶6}    Before accepting a guilty plea to a felony offense, Crim.R. 11(C) requires a trial court to address the defendant and verify that the defendant is entering the plea voluntarily, with an understanding of the effect of the plea, the nature of the charges, and the maximum potential penalty. The court must also inform the defendant of various constitutional rights that the defendant is waiving by entering a guilty plea. *State v. Morris*, 1st Dist. Hamilton No. C-180520, 2019-Ohio-3011, ¶ 15; *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶ 41.

{¶7}    When explaining the constitutional rights that are being waived, the trial court must strictly comply with Crim.R. 11. *Morris* at ¶ 16; *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, syllabus.  But when explaining the nonconstitutional provisions of the rule to a defendant, including the nature of the charges, the maximum penalty involved, postrelease-control obligations, and the effect of the plea, the trial court need only substantially comply with Crim.R. 11. *Morris* at ¶ 16; *Veney* at ¶ 14.  Substantial compliance "means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990).

{¶8}    If a trial court fails to substantially comply with Crim.R. 11 regarding a nonconstitutional provision, a reviewing court must determine whether the trial court partially complied or failed to comply with the rule. *Morris* at ¶ 17; *State v.*

*Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 32. Where a trial court has completely failed to comply with a nonconstitutional provision of the rule, the defendant's plea must be vacated. *Clark* at ¶ 32. But where the trial court has partially complied, the plea may only be vacated if the defendant demonstrates prejudice. *Id.* To establish prejudice, a defendant must demonstrate that the plea would not have otherwise been made if the defendant had been fully informed. *Id.*, citing *Nero* at 108.

{¶9} Stumph specifically argues that that his plea was not voluntary because the trial court conflated the concepts of parole and postrelease control during the plea colloquy when explaining the potential maximum sentence he faced. The following discussion took place during the plea colloquy:

> THE COURT: And basically, he's going to plead guilty as charged to Count 1, which is Aggravated Murder, and that's in violation of 2903.01(B). It's a special felony. It carries a maximum possible fine of $25,000—although he's not going to be fined, it's an indigent case, but it carries anywhere from—from 20 to life, 25 to life, 30 to life or life with no parole. Can we put that [on the plea form]?
>
> [DEFENSE COUNSEL]: We can, Judge, we put life at the end.
>
> THE COURT: It says life. It says 20 to 25 to 30 to life. Let's make sure, because the other option is life with no parole. If you want to put that in and show it to the defendant, he's right here. Make sure he understands that.
>
> [DEFENSE COUNSEL]: Judge, for the record, we're putting—[defense counsel two] is putting it on the document—throughout the entire

case, the negotiations, he was made aware the aggravated murder carries 20, 30 to life, and then life without the possibility of parole.

[DEFENSE COUNSEL TWO]: Judge, I just have written life without the possibility of parole on the plea form. Do you need his initials or can he acknowledge that on the record?

THE COURT: Yeah, could you? You can acknowledge it on the record, that's fine.

DEFENDANT: I acknowledge it, Your Honor.

\* \* \*

THE COURT: [At the sentencing hearing] I'll decide whether you receive 20 to life, 25 to life, 30 to life, or life without parole. If I gave you 20, 25, 30 to life and you eventually got out of prison, you would be on postrelease control then for five years. If you violated that, they could send you back for nine months for every violation until they got up to half your term. And I imagine on that kind of case it would probably be for the rest of your life.

[DEFENSE COUNSEL]: Judge, for special felonies, they are on parole for the rest of your life.

THE COURT: So he would—you would be on—that's right, you would actually be on parole for the rest of your life, even though its 20, 25 to 30—that's right, even if you are, you would get life parole. If you violate, they could send you back for nine months for every violation. I guess if you're on parole for life, they could just keep sending you back

because it's a life term. They could just send him back for nine months or more, at least nine months.

[THE STATE]: At least.

THE COURT: If you commit a felony while on postrelease control, the judge who got the new felony could send you to prison and run that sentence consecutively to how—your life term. I guess at that point they could send you back and you probably end up getting life consecutive to the new term. Or if I decide life with no parole, which is a possibility, there's no promises here, I'm going to look at everything and keep an open mind. Life without the possibility of parole, then you're just locked up for the rest of your life. Do you understand that?

DEFENDANT: Yes, sir.

{¶10} Stumph contends that the plea form he executed further confused the issue of whether he faced parole or postrelease control if he were to be released from prison. The plea form contained the following language:

After release from the Department of Corrections, I understand the following: I shall be supervised on post[-]release control for each offense that is one of the following: a felony of the first degree (F1) for five (5) years; any sex offense for five (5) years; a felony of the second degree (F2) for three (3) years; any felony of the third degree (F3) where I caused or threatened physical harm to a person for three (3) years. I may be supervised on post release control for up to three (3) years, as determined by the parole board for any of the following: a felony of the third degree (F3) which does not involve physical harm or

threatened harm to a person; a felony of the fourth degree (F4); and a felony of the fifth degree (F5). The parole board could return me to prison for up to nine (9) months for each violation of these conditions for a total of 50% of my stated term. If I commit a new felony while on post-release control, I may be punished both for the violation of post-release control and the new offense. At sentencing for the new felony, I may then receive a prison term for the violation for post-release control of up to the remaining period of post-release control or one (1) year, which ever is greater. A prison term imposed for the violation shall be served consecutively to any prison term imposed for the new felony.

{¶11} Because Stumph pled guilty to aggravated murder, an unclassified or special felony, he was not subject to postrelease control. *Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, at ¶ 36; R.C. 2967.28. Rather, an offender convicted of aggravated murder "is either ineligible for parole or becomes eligible for parole after serving a period of 20, 25, or 30 years in prison." *Id.* at ¶ 36. Whereas an offender subject to a term of postrelease control faces a period of supervision after the offender has served her or his prison sentence, an offender subject to parole "is released from confinement before the end of his or her sentence and remains in the custody of the state until the sentence expires or the Adult Parole Authority grants final release." *Id.* at ¶ 35-36.

{¶12} A trial court is not required to inform an offender about parole when discussing the maximum penalty faced in a plea colloquy because an offender is not guaranteed to be released on parole. *Id.* at ¶ 37. But if a trial court elects to give a

more detailed explanation of the penalty, including parole, the information conveyed must be accurate. *Id.* at ¶ 39.

{¶13} Here, the trial court conflated the concepts of parole and postrelease control and appeared to use them interchangeably throughout the plea colloquy. The trial court first told Stumph that he would be placed on postrelease control for five years if he were released from prison. Defense counsel corrected the court and informed it that Stumph would be subject to parole, rather than postrelease control. The trial court acknowledged that Stumph would be placed on parole, but then proceeded to inform Stumph what would happen if he violated a term of his postrelease control. Given the trial court's intermingling and misuse of the concepts of parole and postrelease control, we cannot find that it substantially complied with the Crim.R. 11 requirement that it inform Stumph of the maximum penalty faced.

{¶14} The trial court did, however, partially comply with the rule (as opposed to completely failing to comply), so Stumph must establish that he was prejudiced by the trial court's explanation for his plea to be vacated—that is, that he would not have entered the plea if the trial court had correctly explained the concept of parole. Stumph has not established the requisite prejudice. He was aware that he potentially faced a sentence of life without the possibility of parole and that he might never be released from prison, and he elected to plead guilty with that knowledge. Further, in exchange for Stumph's guilty plea to aggravated murder, the state dismissed a death-penalty specification and three additional charges. The record contains no evidence that the trial court's references to postrelease control induced Stumph to enter his plea. *See State v. Baker*, 1st Dist. Hamilton No. C-050791, 2006-Ohio-4902, ¶ 13 (holding that a defendant was not prejudiced by the trial court's incorrect reference

to postrelease control where life imprisonment was the maximum sentence faced and the incorrect statements regarding postrelease control did not detract from that); *State v. Clifton*, 8th Dist. Cuyahoga No. 105220, 2018-Ohio-269, ¶ 19 (where the defendant avoided a possible death sentence and a sentence of life imprisonment without the possibility of parole, the defendant was not prejudiced by the trial court's erroneous statement that he would be subject to a five-year period of postrelease control).

{¶15} Stumph's plea form does not assist him in establishing prejudice. While the plea form referenced postrelease control, it indicated that offenders convicted of felonies of the first degree, sex offenses, felonies of the second degree, and certain felonies of the third degree would face a period of postrelease control, and that offenders convicted of certain felonies of the third degree and felonies of the fourth and fifth degrees may face a period of postrelease control. But the plea form indicated that Stumph had pled guilty to aggravated murder, which it also indicated was a special felony. The plea form thus did not provide that Stumph faced a period of postrelease control.

{¶16} We hold that Stumph has failed to establish that he was prejudiced by the trial court's erroneous comments regarding parole and postrelease control.

{¶17} Stumph additionally argues that his plea was not entered knowingly, voluntarily, and intelligently because the trial court conflated the concepts of a guilty plea and a no-contest plea when informing Stumph about the effect of his plea. Crim.R. 11(B) provides that a guilty plea "is a complete admission of the defendant's guilt," and that a no-contest plea "is not an admission of defendant's guilt, but is an

9

admission of the truth of the facts alleged in the indictment." Crim.R. 11(B)(1) and (2).

{¶18} During the plea colloquy, the trial court stated that "When you plead guilty, you're admitting to the indictment. You're pleading guilty to the Agg Murder and the facts and I can find you guilty and sentence you as soon as I accept your plea." The trial court did not conflate the effect of a guilty plea and a no-contest plea as claimed by Stumph. A guilty plea admits the facts contained in the indictment and that the defendant concedes those facts constitute the crime; a guilty plea is a "complete admission of guilt." A no-contest plea, on the other hand, merely admits the truth of the facts contained in the indictment, but leaves it to the court to determine whether those facts constitute a crime. Here, the court informed Stumph that he was pleading guilty to aggravated murder *and* the facts. The court did, however, fail to substantially comply with the requirement that it inform Stumph that a guilty plea was a complete admission of his guilt. We find, however, it did partially comply with the requirement by informing Stumph he was pleading guilty. *See Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, at ¶ 32. Stumph was therefore required to establish that he was prejudiced by the trial court's omission, which he has failed to do. The record clearly indicates that Stumph desired to plead guilty, and it contains no indication that he would not have entered the guilty plea had the trial court informed him that the plea was a complete admission of his guilt.

{¶19} We hold that Stumph entered his guilty plea knowingly, voluntarily, and intelligently. The first assignment of error is overruled.

***Sentencing***

{¶20}  In his second assignment of error, Stumph argues that the trial court erred in imposing a sentence of life imprisonment without the possibility of parole.

{¶21}  Pursuant to R.C. 2953.08(D)(3), "[a] sentence imposed for aggravated murder or murder pursuant to sections 2929.02 to 2929.06 of the Revised Code is not subject to review under this section."

{¶22}  In *State v. Smith*, 1st Dist. Hamilton No. C-180227, 2020-Ohio-649, ¶ 38, this court recently concluded that under R.C. 2953.08(D)(3), we lacked authority to review the appellant's sentence for aggravated murder.  We held that "[a]s interpreted by the Ohio Supreme Court, R.C. 2953.08(D) is 'unambiguous' and 'clearly means what it says:  such a sentence cannot be reviewed.' " *Id.*, quoting *State v. Porterfield*, 106 Ohio St.3d 5, 2005-Ohio-3095, 829 N.E.2d 690, ¶ 17.  However, in *State v. Patrick*, Slip Opinion No. 2020-Ohio-6803, ¶ 17, the Supreme Court of Ohio clarified that R.C. 2953.08(D)(3) only precluded review of sentences imposed for murder and aggravated murder under *that section*, and that sentences imposed for murder and aggravated murder may still be appealed under other sections.

{¶23}  As set forth in *Patrick*, R.C. 2953.08 "does not establish the *only* basis by which a party may appeal a sentence." *Id.* at ¶ 15.  The court recognized that R.C. 2953.02 provides a "right to appeal a judgment or final order to the court of appeals '[i]n a capital case in which a sentence of death is imposed for an offense committed before January 1, 1995, *and in any other criminal case* * * *' " as well as provided for the appeal from a judgment or final order of "a question arising under the Constitution of the United States or of this state." *Id.* at ¶ 16, quoting R.C. 2953.02.  The court clarified that the term "final judgment" in R.C. 2953.02 referred to the

sentence. Finding that "the preclusive language in R.C. 2953.08(D)(3) demonstrates that its scope is limited to the bases of appeal described in R.C. 2953.08," the court determined that Patrick's constitutional challenge to his sentence imposed for aggravated murder was not precluded by R.C. 2953.08(D)(3). *Id.* at ¶ 17 and 22.

{¶24} Here, Stumph has raised a constitutional challenge to his sentence, arguing that the trial court improperly interjected personal bias while imposing sentence in violation of Stumph's constitutional rights to due process and fair proceedings before an impartial judge. Pursuant to *Patrick*, we can review Stumph's sentence on this ground.

{¶25} The typical avenue for redress when a party believes that a trial court is biased is to file an affidavit of bias and prejudice with the Supreme Court of Ohio. *State v. Loudermilk*, 2017-Ohio-7378, 96 N.E.3d 1037, ¶ 18 (1st Dist.). But where an appellant argues that the trial court's bias impacts the outcome of the case and violates the appellant's due process rights, which is what Stumph has argued in this case, an appellate court has jurisdiction to review the claim of bias. *Id.* at ¶ 20.

{¶26} At sentencing, Stumph's counsel argued that his military service should serve as a mitigating factor. Defense counsel told the court that Stumph had served as a gunner in a Humvee in Iraq, as well as a guard at a camp in Afghanistan, and that he suffered from psychological trauma following his service, including post-traumatic stress disorder. When imposing sentence, the trial court noted that Stumph had "already been given a break" because of his military service, specifically in the dismissal of the death specification. The court then proceeded to discuss several of his friends that were veterans. The court stated:

I had one friend, [name of friend], my best friend, a Vietnam Vet, a real hero. I'm trying to get him a medal because of what he did. All his friends were killed in battle. All his friends were killed and he was still trying to pull a sergeant up, went up the hill, he fired, there was a machine gun. They were trying to protect from the enemy and, you know, he became a Cincinnati fireman, paramedic, successful fire career. Great family man who never committed any crimes. I have another friend I work out with who is a veteran. He suffers from bad dreams but, you know, he has a successful career with Cincinnati Bell. He's a good citizen, had a wife, kids and never committed any crimes. They were real heroes in my mind, and they never did anything. So they never did anything like this, they didn't kill people, you know, torture some old man and kill him, you know. It's, you know, that just doesn't work with me because I knew two guys who were real heroes and they dealt with it and they didn't come back and kill people.

*　　*　　*

And really, to give you any kind of break at this point would really be a slap in the face to them, to other veterans who served their country and lived great lives and are great family men, and that just doesn't work with me.

{¶27} Stumph contends that these comments—in which the trial court compared Stumph's behavior to the court's veteran friends—demonstrated its bias.

{¶28} A trial court is presumed to be fair and impartial. *State v. Khamsi*, 2020-Ohio-1472, 153 N.E.3d 900, ¶ 56 (1st Dist.). A party establishes judicial bias by

13

demonstrating "a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as contradistinguished from an open state of mind which will be governed by the law and the facts." *Loudermilk,* 2017-Ohio-7378, 96 N.E.3d 1037 at ¶ 21, quoting *State ex rel. Pratt v. Weygandt*, 164 Ohio St. 463, 469, 132 N.E.2d 191 (1956), paragraph four of the syllabus.

{¶29} The trial court's comments at sentencing regarding the behavior and accomplishments of its friends who were veterans were ill advised, but we cannot find that the comments demonstrated bias on the part of the court. A trial court "is not required to divorce itself from all personal experiences and make [its] decision in a vacuum." *State v. Arnett*, 88 Ohio St.3d 208, 216, 724 N.E.2d 793 (2000), quoting *State v. Cook*, 65 Ohio St.3d 516, 529, 605 N.E.2d 70, 84 (1992). "Any sentencing decision calls for the exercise of judgment. It is neither possible nor desirable for a person to whom the state entrusts an important judgment to decide in a vacuum, as if he had no experiences." *Barclay v. Florida*, 463 U.S. 939, 950, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983). In *Barclay*, the Supreme Court of the United States recognized that attempting to separate a judge's decision from her or his experiences would transform the sentencing process "into a rigid and mechanical parsing of statutory aggravating factors." *Id.* For this reason, "[i]t is entirely fitting for the moral, factual, and legal judgment of judges and juries to play a meaningful role in sentencing." *Id.*

{¶30} The trial court's comments did not indicate that it lacked an open state of mind or that it would not consider the facts before it. We therefore hold that the

14

trial court's comments at sentencing did not demonstrate judicial bias or deprive Stumph of his due process right to a fair proceeding before an impartial judge.

{¶31} In this assignment of error, Stumph additionally contends that the trial court failed to afford due consideration to Stumph's military service and improperly treated the mitigating factors presented by the defense as aggravating factors. Stumph's challenges to his sentence on these grounds are precluded by R.C. 2953.08(D)(3) because these challenges support his argument that the record did not support his sentence and that the sentence was contrary to law, which is a basis of appeal provided for in R.C. 2953.08(D)(4).

{¶32} But even if this court had the authority to review Stumph's sentence on these grounds, we would be unable to conduct the type of sentencing review that he seeks following the recent decision of the Supreme Court of Ohio in *State v. Jones*, Slip Opinion No. 2020-Ohio-6729. *See State v. Loy*, 4th Dist. Washington No. 19CA21, 2021-Ohio-403, ¶ 30. In *Jones*, the court held that "[n]othing in R.C. 2953.08(G)(2) permits an appellate court to independently weigh the evidence in the record and substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12." *Jones* at ¶ 42.

{¶33} The second assignment of error is accordingly overruled.

### *Cumulative Error*

{¶34} In his third assignment of error, Stumph argues that the cumulative effect of the errors tainting his plea and sentencing hearings requires reversal of his conviction.

{¶35} To the extent that we have authority to review Stumph's sentence, we have found no error that occurred at sentencing. And while we found that the trial

court failed to substantially comply with the Crim.R. 11 requirements that it inform Stumph of the maximum sentence faced and the effect of the plea, we found that he was not prejudiced by the trial court's partial compliance with those requirements. We accordingly decline to find that the effect of cumulative errors deprived Stumph of his constitutional right to a fair proceeding. *See State v. English*, 1st Dist. Hamilton No. C-180697, 2020-Ohio-4682, ¶ 109.

{¶36} The third assignment of error is overruled.

### *R.C. 2953.08(D)(3)*

{¶37} In his fourth assignment of error, Stumph challenges the constitutionality of R.C. 2953.08(D)(3).

{¶38} As set forth above, this statute provides that "[a] sentence imposed for aggravated murder or murder pursuant to sections 2929.02 to 2929.06 of the Revised Code is not subject to review under this section." R.C. 2953.08(D)(3). Stumph contends that because the statute prohibits meaningful appellate review of sentences imposed on offenders convicted of murder and aggravated murder, it is in violation of the prohibition against cruel and unusual punishment, the Equal Protection Clause, and both substantive and procedural due process.

{¶39} We do not reach the merits of this assignment of error. The law is clear that "courts should avoid reaching constitutional issues if they can decide the case on other grounds." *DeVan v. Cuyahoga Cty. Bd. of Revision*, 2015-Ohio-4279, 45 N.E.3d 661, ¶ 10 (8th Dist.). Courts should "not reach constitutional issues unless absolutely necessary." *See In re D.S.*, 152 Ohio St.3d 109, 2017-Ohio-8289, 93 N.E.3d 937, ¶ 7, quoting *State v. Talty*, 103 Ohio St.3d 177, 2004-Ohio-4888, 814 N.E.2d 1201, ¶ 9. Applying these long-standing principles, we elect not to consider

16

the constitutionality of R.C. 2953.08(D)(3) in this case. In *Patrick*, the Ohio Supreme Court held that R.C. 2953.08(D)(3) does not preclude all appellate review of sentences imposed for murder and aggravated-murder offenses, and we have reviewed, in accordance with *Patrick*, Stumph's argument that his constitutional right to due process and a fair proceeding were violated because the trial court was biased in imposing sentence. As to Stumph's remaining challenge to his sentence—that the record does not support the sentence imposed—following the decision of the Supreme Court of Ohio in *Jones*, we could not conduct the review he requests even if we were to declare R.C. 2953.08(D)(3) unconstitutional. For these reasons, it is not "absolutely necessary" to reach Stumph's constitutional challenges to R.C. 2953.08(D)(3) in this case. *See In re D.S.* at ¶ 7.

### *Conclusion*

{¶40} Having found that Stumph entered his guilty plea knowingly, voluntarily, and intelligently and that the trial court did not deprive Stumph of his due process right to a fair trial by exhibiting personal bias when imposing sentence, we accordingly affirm the trial court's judgment.

Judgment affirmed.

**ZAYAS, P.J.,** and **CROUSE, J.,** concur.

Please note:
    The court has recorded its own entry on the date of the release of this opinion.

17